T. B. PHILLIPS, ADMINISTRATOR, v. W. S. ORR ET AL.

(Filed 11 May, 1910.)

1. Nonsuit—Evidence, How Construed.

The rule of the construction of evidence on motions to nonsuit, as laid down in *Morton v. Lumber Co.*, *ante*, 54, affirmed.

2. Bathing Resorts—Duty of Owners—Who Are Not Liable—Police Regulations—Officers.

In an action for damages for negligently. permitting the drowning of plaintiff's intestate while swimming in a lake in a park, it appeared that the defendants had no control over the lake or park, except, under the police regulations of the town, to prevent nude persons from bathing therein, and were without control over the bathers and received no toll from them for bathing, though the defendants did rent a limited number of bathing suits to those who came unsupplied: *Held*, under the evidence no actionable negligence was shown and a judgment of nonsuit was properly allowed. The decisions laying down the rule of duty owed by owners and proprietors of public bathing resorts, cited and distinguished.

APPEAL from *Webb, J.*, at November Term, 1909, of MECKLENBURG.

At the close of plaintiff's evidence defendant moved for judgment as of nonsuit, and renewed this motion at the close of the entire evidence. The motion was allowed, and plaintiff excepted and appealed.

The facts established by the evidence are as follows: Horace Phillips, the plaintiff's intestate, a boy between 15 and 16 years of age, of good size and apparently sound and healthy, a good swimmer, was drowned on the afternoon of 5 July, 1908, in a lake or pond in Latta Park, in the city of Charlotte. The park is open to the white public, and so is the lake or pond; the only restriction placed upon the use of the lake was that bathers should not go in nude. The lake was about 100 yards long by

PHILLIPS *v.* ORR.

about 100 feet wide, and was situate in a part of the park frequented by ladies, children and men. Driveways and walkways were around and near the pond, so that the lake was easily visible to persons in the park. In 1907 complaint was made that the boys were bathing in the pond in a nude condition, and the defendant Orr, then chief of police, was directed by the board of public safety of the city, having charge and direction of its police force, to put a stop to nude bathing in the lake. The defendant stationed a policeman in the park to prevent this. Being appealed to by some young men, the defendant Orr bought a half-dozen bathing suits and put them in charge of the policeman in charge of the park, and these were rented for 25 cents each. Any bather having his own suit went in the lake without charge. The defendant Orr had no further or other control of the lake than to prevent nude bathing. In 1908 the same status continued, except that a rough shack was put up for a dressing-room; theretofore the bathers concealed themselves in the bushes while dressing and undressing; a spring-board and three rough canoes were put on the lake and a rope 300 feet long provided; for the use of a boat a charge of 10 cents per hour was made; there were no other appliances for the safety of the bathers provided. The lake varied in depth from 6 or 8 inches to 12 feet.

On the afternoon of the drowning, the intestate, in company with other boys and some men, was in bathing. The intestate rented his suit, but there were other bathers who were using their own suits. After having been in for nearly two hours, the defendant Phillips, the policeman then in charge, saw deceased standing in water about 8 inches deep, and observing that he seemed to be cold, that his lips were blue, told him to come out and put on his clothes; that, apparently obeying him, the intestate came out, went in the direction of the dressing-room, but instead of dressing, went to another part of the lake where he was concealed from the view of the defendant Phillips and went in the pond again; that he had been in only a few minutes when he told a companion that he had cramp in his left arm and leg; that this companion was about 20 feet away, sitting on the dam, and as deceased indicated a purpose to come to him, told him not to do so, but that he would come to the deceased; disregarding this warning, the deceased started to swim to his companion, when, after going about 10 feet, he sank, called, and, before he could be rescued, was drowned.

Deceased was a good swimmer and had that afternoon been swimming all over the lake.

Lester Ross, the youth who was sitting on the dam, gave the

alarm; the defendant Phillips came out in a boat in two or three minutes; the other bathers came, but they were unable, by diving and feeling with a paddle, to locate the body. In a short time the defendant Orr, who had been called by phone, came out with a fire pole or hook, and the body being located, one of the bathers dived for it and brought it up. This was about thirty minutes after the disappearance of the deceased under the water. The efforts to resuscitate him were unavailing.

The plaintiff, having qualified as administrator of the deceased, his son, brought this action against Orr and Phillips, to recover damages for the death of the deceased, which he alleges to have been caused by a breach of duty of the defendants, in that they were running a bathing establishment for profit at this pond and did not provide the necessary appliances and supervision for guarding and protecting the safety of the bathers, who came there by the invitation of the defendants; and failed to post signals at the deep places in the lake to warn the bathers of the danger; that no means were provided for recovering quickly drowning bodies, or rescuing the bathers in distress, or resuscitating the bodies recovered.

The above statement presents the facts upon which his Honor allowed the motion of nonsuit.

*J. D. McCall, Brevard & Nixon* and *Clarkson & Duls* for plaintiff.

*Maxwell & Keerans* and *Stewart & McRae* for defendants.

MANNING, J. This case coming to us by appeal from a judgment of nonsuit at the close of all the evidence, we must, as has been frequently said by this Court, construe the evidence "in the view most favorable to the plaintiff, and every fact which it tends to prove, and which is an essential ingredient of the cause of action, must be taken as established, as the jury might have found those facts from the testimony." *Morton v. Lumber Co., ante,* 54, and cases cited. The theory upon which plaintiff seeks to recover, as appears from the complaint, the evidence and briefs filed, and the only theory upon which he could recover, is that defendants were engaged in the business of carrying on a public bathing resort, and were negligent in performing the duties imposed upon them as such proprietors. The cases relied upon by plaintiff not only to show the extent of the duty imposed upon defendants, but to support his contention that his Honor erred in not submitting the case to the jury are *Barrett v. L. O. B. Imp. Co.,* 40 N. Y. Supp., 764; *Brotherton v. Manhattan Beach Imp. Co.,* 69 N. W., 757

(Neb.); *ibid.*, 67 N. W., 479; *Larkin v. Saltair Beach Co.* (Utah), 3 L. R. A. (N. S.), 982; *Boyce v. Union Pacific R. R. Co.* (Utah), 18 L. R. A., 509; *McGraw v. District of Columbia,.* 25 L. R. A., 691; *Bass v. Reitdorf* (Ind.), 58 N. E., 95; 29 Cyc., 466. These cases deal with the duty owing by the owners or proprietors of public bathing resorts.

In the view which we regard as decisive of this appeal, we deem it unnecessary to determine the extent of duty or measure of liability of a person or corporation maintaining a public bathing resort. The initial question to be determined is whether, upon the evidence, the defendants were maintaining a public bathing resort, and we think the evidence, considered in its most favorable view for the plaintiff, fails to show that the defendants were operating such a resort, or in fact were conducting any kind of a bathing resort. They had no control over the park or the lake, by lease or otherwise, except to prevent nude persons from bathing in the lake, itself a public nuisance. Any person desiring to bathe in the lake properly clothed could do so, without the permission of either of the defendants, and without paying toll to them. The defendants. had no lease upon the lake or the park, nor any exclusive privileges of bathing, furnishing bathing suits, or any control over those bathing in the lake.

The fact chiefly relied upon by plaintiff is that the defendants had six bathing suits, which they rented to persons desiring to bathe, at 25 cents each; but this is wholly insufficient to entitle the defendants to be designated as the proprietors of a bathing resort, in view of the other facts presented by plaintiff through Mr. Latta. They could as well have furnished these from an office or store in the city a half mile away. The defendants did no advertising, by poster or in newspaper, nor does it appear that they even solicited any person to bathe in the waters of the lake. Those who had their own bathing suits bathed in the lake *ad libitum* and without price. The defendant Phillips was present as a public officer to prevent those, so evilly inclined, from bathing nude in the water.

Further, it clearly appears from the evidence that the defendant Phillips, observing the appearance of the intestate, directed him to come out and to dress. The intestate did come out; went towards the "dressing-room"—a rude structure built by nailing a few planks to some trees, to screen the bathers. while dressing and undressing—and entered the lake again at a place concealed by bushes, out of the sight of the defendant Phillips, when soon after, unfortunately, he was drowned.

Promptly upon the alarm of danger, the policeman Phillips.

went to the rescue of the drowning youth; so did all those in bathing, and they attempted by every means at their command to find his body. The accident was unfortunate, but taking that view of the evidence most favorable to the plaintiff, and regarding as established every essential ingredient of the cause of action that is permissible by the evidence, we think it fails to show any breach of duty owing by the defendants, or either of them, to the deceased, and hence, to establish facts sufficient in law to fix upon them liability to the plaintiff for the death of his intestate. In our opinion, there was no error in sustaining the motion for judgment as upon nonsuit, and the judgment is

Affirmed.