JAMES BELTON ADAMS, ADMINISTRATOR OF ESTATE OF JAMES BELTON ADAMS, JR., v. AMERICAN ENKA CORPORATION.

(Filed 15 June, 1932.)

1. **Negligence A c—One entering lands of another solely for his own pleasure is a licensee and not invitee.**

   The general rule is that a person entering upon the premises of another solely for his own pleasure with the implied permission of the owner is a licensee and not an invitee, and where the owner of land constructs and maintains a lake thereon and does not prohibit the public from using the lake but derives no pecuniary benefit therefrom and exercises no control or supervision over the bathers therein, a member of the public so using the lake is a mere licensee, and the rule of liability of the operators of bathing resorts or beaches does not apply to such owner.

2. **Same — Owner of lake permitting public to swim therein without compensation or control is not required to provide life guards.**

   A manufacturing corporation which constructs and maintains a lake for manufacturing purposes, and which permits and allows employees and the public generally to swim therein, without charge, compensation or control is not liable in damages for the drowning of a visitor while swimming in the lake in the absence of some negligent act on its part, and, the public using the lake being mere licensees, the corporation is not required to keep life guards or life-saving equipment at the lake, and the rule of liability of proprietors of bathing resorts is not applicable to it although it provided a diving board at the lake and covered the edge of the water with sand to form a kind of beach, and where an action against it to recover damages for the drowning of a member of the public is brought solely on the basis of its failure to provide life guards or life-saving equipment the action is properly nonsuited.

CIVIL ACTION, before *Sink, J.,* at March Term, 1932, of BUNCOMBE

The plaintiff is the administrator of his son, a young man approximately eighteen years of age, who was drowned on 30 June, 1931, while swimming in a lake constructed and owned by the defendant. The defendant operates a large rayon silk mill in Buncombe County, and in the due prosecution of its business it is necessary to have available large quantities of clear water. In order to supply the necessary volume the

defendant constructed a lake and laid out streets and roadways leading thereto. There was a club house erected near the lake and a spring board. Along the water's edge sand had been placed, creating a sort of beach. The defendant leased a piece of ground near the lake to a third party who conducted a soft ·drink stand, selling such articles as are usually found and sold in such places. After the lake was filled with water the employees of the defendant used the same for swimming purposes, and thereafter the public generally resorted to this lake for swimming and bathing.

There was evidence tending to show that·from seventy-five to one hundred or one hundred and fifty people used the lake daily during the summer. Near the diving board the defendant had erected a large sign reading as follows: "Warning. Any one swimming here does so at his own risk." .The sign was about six feet and two inches high and was placed about fourteen feet from the water.

The events preceding the death of plaintiff's intestate are substantially as follows: On 30 June, shortly after dinner, a young man called by telephone the brother of intestate to inquire if "he desired to go swimming." The deceased went along with his brother and two other young men named Lynn Peterson and Fred Bearden. They drove from Asheville to the lake of the defendant. The deceased went up in the woods and put on a pair of trunks and returned to a point near the diving board. He inquired of his brother how deep the water was there, and the brother informed him that it was "a good ways over his head." The deceased said: "All right, I am going across the opposite side." The brother remarked: "You see that rye field over there," and deceased answered "Yes," and then said: "Do you want me to get you a straw of that?" The brother replied "Yes, bring me back one." The deceased said "All right," and immediately struck out across the lake. He started about thirty feet from the diving pier. There were sixty-five or seventy-five people in the lake at the time. The evidence tended to show that the distance across the lake was about 392 feet. When the deceased reached a point about twenty yards from the opposite side of the lake suddenly he cried for help and began "fighting the water." The brother of the deceased said: "After my brother hollered for help, one fellow who had on a red and white bathing suit jumped off and swam out towards him after he hollered and went down. He had already gone down before anybody went out. We tried to find a boat, but there wasn't any to be seen except down at the boat house. Finally somebody got a boat and went out there. It was a flat boat. . . . One man started diving off to see if he could find him. I don't know who that was." The witness further testified that he did not see any life guards nor life-saving

equipment. The body of deceased was not recovered until five ·or six hours after he went down in the lake.

The evidence showed conclusively that the deceased was an alert, strong boy, who was considered a good athlete and who was acknowledged by all to be a good swimmer.

The evidence further disclosed that the defendant corporation charged no fee or compensation whatever for the privilege of swimming in the lake and sold no bathing suits or other equipment to people who desired to use the same, nor did the defendant attempt to exercise any direction or control over the swimmers in any particular whatever.

There was much evidence offered by both parties, but the determinative facts are substantially as above stated.

The action was originally instituted in the County Court of Buncombe County, and the verdict awarded plaintiff damages in the sum of $10,000. Thereupon an appeal was taken by the defendant to the Superior Court upon exception duly filed, and the trial judge sustained certain exceptions filed by the defendant, including the exceptions taken by the defendant to the failure of the judge of the county court to nonsuit the case. Thereupon it was ordered and adjudged in the Superior Court that the action be nonsuited and dismissed, from which judgment the plaintiff appealed to the Supreme Court.

*Braxton Miller, Zeb F. Curtis and Campbell & Sample for plaintiff.*
*S. G. Bernard, Johnson, Smathers & Rollins and Moore Bryson for defendant.*

BROGDEN, J. Is a manufacturing corporation which constructs and maintains a lake for manufacturing purposes, and which permits and allows employees and the public generally to swim therein, without charge, compensation or control, liable in damages for the drowning of a visitor while swimming in the lake?

The plaintiff insists that he is entitled to recover upon the theory that his intestate was invited to swim in the lake by virtue of the fact that a diving board had been prepared for the use of the public and a beach provided for swimmers. Consequently it is argued that the defendant under the circumstances, in the exercise of ordinary care, should have kept life guards and life-saving equipment. The general rule is thus expressed in 22 A. L. R., p. 636: "Proprietors of a bathing resort, in discharging the duty of ordinary care for the safety of patrons, may be obliged to keep someone on duty to supervise bathers and rescue any apparently·in danger; and may also be held liable for negligence if, on information that a bather is missing, they are tardy in instituting

25—202

search." The various aspects of liability imposed by law upon the proprietors of bathing resorts are discussed in 22 A. L. R., 635; 38 A. L. R., 359; 53 A. L. R., 855.

The preliminary question is: Was the plaintiff an invitee or a licensee? This Court in *Jones v. R. R.*, 199 N. C., p. 1, 153 S. E., 637, said: "An invitee is one who goes upon the property of another by the express or implied invitation of the owner or the person in control. A license implies permission and is more than mere sufferance; an invitation implies solicitation, desire, or request." Moreover, invitation also implies mutual interest, benefit or advantage. Practically all of the authorities agree that if a person enters upon the premises of another solely and exclusively in pursuit of his own pleasure, or to gratify his own curiosity that he is a licensee. This idea was thus expressed in *Money v. Hotel Co.*, 174 N. C., 508, 93 S. E., 964: "When persons enter a hotel or inn, not as guests, but intent on pleasure or profit to be derived from intercourse with its inmates, they are there, not of right, but under an implied license that the landlord may revoke at any time." Recovery was denied in *Gibbs v. R. R.*, 200 N. C., 49, 156 S. E., 138, upon the ground that the plaintiff "had no business upon the premises of the railroad company, but sat down upon the platform to wait for trains to pass," and while sitting there was injured by a gang plank. See, also, *Murphy v. Murphy, ante*, p. 394.

There is no case in this State directly in point, but there are several decisions which by analogy and parity of reasoning, determine the merits of this controversy. For example, in *Brooks v. Mills Co.*, 182 N. C., 719, 110 S. E., 96, the defendant prepared a baseball diamond on its premises and purchased the usual equipment for the use of players and built a grandstand for the amusement and pleasure of its operatives. Admission fees were charged to all games, but the money so paid was used for purchasing balls, bats, gloves and other equipment, no part thereof being paid to the defendants. In denying recovery the Court said: "In fact, the evidence seems conclusively to show that the defendant prepared the ground, purchased playground fixtures, and erected a grandstand for the amusement and recreation of the operatives, but did not receive any pecuniary compensation, or pretend in any way to direct or supervise the game. The plaintiff, therefore, can derive no aid from the familiar principle that the owner or lessor of a place of amusement set apart and maintained for his pecuniary benefit is charged with the duty of exercising due care to see that the premises are reasonably safe for the purposes intended."

Discussing the liability of a defendant for the drowning of a boy while swimming upon its premises, in *Gurley v. Power Co.*, 172 N. C.,

690, 90 S. E., 943, the Court said: "We will not undertake to quote from these decisions. They all deal with the subject under discussion and hold that a pond or reservoir is not a dangerous instrumentality or an attractive nuisance. In almost every case the owner of the premises knew of the custom of boys entering thereon to bathe in the pool or pond, but was held not liable for any mishap. Bathing pools are nothing new or rare. They abound in almost every public park, gymnasium, and Y. M. C. A. building, as well as many country clubs. It is a well known and general custom for boys to swim in millponds and invade the lands of farmers to bathe in their marl pits. Who will contend that the mill owner and farmer are liable for death or injury of the bathers because of such ownership?" See, also, *Phillips v. Orr,* 152 N. C., 583, 67 S. E., 1064; *Briscoe v. Power Co.,* 148 N. C., 396, 62 S. E., 600.

There is no evidence that the deceased met his death by reason of any defect in the lake. Nor does the testimony disclose any reason for the fact that the young man suddenly cried for help, began fighting the water and went down. Whether he was seized with cramp or sickness is left in doubt. The sole basis for recovery consists in the contention that the defendant should have provided life guards at its own expense, and that if such life guards or life-saving equipment had been available, the life of deceased might have been saved thereby. This testimony creates a legal fog of such low visibility as to prevent the watchful and alert eye of the law from discovering liability for actionable negligence. Therefore, the judgment of nonsuit was properly entered.

Affirmed.