EARL WILLIAMS, ADMINISTRATOR OF THE ESTATE OF ROBERT EARL WILLIAMS, DECEASED v. FULTON McSWAIN, CARL JESSUP, HARRY WOMBLE AND JACK WOMBLE.

(Filed 19 March, 1958)

**1. Negligence § 4f—**

The owner of property is liable to an invitee for injuries caused by dangerous conditions which are known, or which should have been known, by the property owner and which are unknown and not to be anticipated by the invitee.

**2. Same—**

An invitee is not a mere licensee but is one who goes upon the property of another by express or implied invitation.

**3. Boating - Evidence held insufficient to show negligence on part of owners of beach in breaching duty to invitee.**

Defendants, under permit from the Department of Conservation and Development, operated certain concessions on a lake owned and operated by the State as one of its parks. G.S. 113-8. Plaintiff's intestate was injured when struck by a boat while intestate was swimming in the waters of the lake. There was no evidence that intestate entered the waters from the beach owned by defendants or that he intended to use such beach, nor evidence that defendant owners had designated the area for swimming, but to the contrary, it did appear that the State regulations did not permit owners of beaches to erect any sign in the waters in the lake or to mark or chart any area prohibited to boats. *Held:* The evidence fails to support plaintiff's allegation of negligence of defendant owners in failing to warn intestate of danger from boats, or even that intestate was an invitee of defendants.

**5. Same—**

Intestate was fatally injured when struck by a propeller of a commercial boat, carrying passengers for hire, while intestate was swimming in the waters of a lake owned by the State. Plaintiff alleged that the owner of the boat was negligent in entrusting it to an immature and reckless master. *Held:* In the absence of any evidence to support the allegations as to the careless and reckless nature of the boat master, recovery cannot be predicated upon such theory.

**6. Same—**

A person operating a boat in waters frequented by bathers or other

WILLIAMS v. McSWAIN.

; boats is under duty to maintain such lookout as a reasonably prudent person would maintain to discover and avoid injury to others lawfully using the waters, and is chargeable with the knowledge which such lookout would disclose, but in the absence of some warning to the contrary, the duty of lookout is limited to objects on or above the surface of navigable waters.

7. Same—Negligence is not presumed from the mere fact of injury.

Intestate was killed when struck by the propeller of a commercial boat owned by one defendant and operated by him on a State Lake under license from the Department of Conservation and Development. The evidence further tended to show that the injury was inflicted near a barrel-type buoy placed in the lake by the Department. The evidence failed to disclose the speed of the boat or whether intestate was submerged at the time of the injury, or whether intestate was hidden from view by the buoy, etc. Held: The evidence is insufficient to show that the injury resulted from negligent speed of the boat or the failure of the boat captain to maintain a proper lookout.

APPEAL by defendants from Frizzelle, J., September 1957 Term of SAMPSON.

Plaintiff seeks compensation for the death of his intestate asserted to have been caused by the negligent acts of defendants Womble and Jessup, the employee and agent of defendant McSwain. Defendants denied the asserted negligence and pleaded contributory negligence: The jury answered the issues of negligence in the affirmative, contributory negligence in the negative, and fixed the amount of plaintiff's damages. Judgment was entered on the verdict and defendants appealed.

Butler & Butler for plaintiff appellee.

Hester & Hester, Nance, Barrington & Collier, and Rudolph G. Singleton, Jr. for defendant appellants.

RODMAN, J.    Upon the conclusion of plaintiff's evidence, defendants made appropriate motions to nonsuit, electing not to offer any evidence. Their motion was overruled. The exception then taken is here urged as a ground for reversing the judgment.

The evidence on which plaintiff relies to support the verdict comes almost entirely from admissions made in the answers of defendants. The facts disclosed by the evidence may be summarized as follows:

Robert Earl Williams, plaintiff's intestate, his eighteen-year-old son, finished high school in July 1954. He was a healthy, smart, and intelligent boy, six feet one inch in height, and weighed 160 pounds. On the forenoon of Sunday, 25 July 1954, he was swimming in White Lake. He died as a result of injuries sustained when struck by the propeller of a motorboat. White Lake, one of the "Carolina bays," is owned by the State, G.S. 146-7, operated as one of the State's parks pursuant to G.S. 113-8. The Department of Conservation and Development, acting under G.S. 146-8, promulgated regulations applicable to White Lake. The regulations, after reciting the statutory

authority under which they were promulgated, recite: ". . . all public use shall be in accordance with the following State Lakes Regulations which are herewith legally posted. The purpose of these regulations is the coordination of all uses of the State Lakes in order to promote the best use for the most people."

Defendants Womble owned property on the lake known as Goldston's Beach. There they operate certain concessions including a bathhouse. They rent dressing rooms and bathing suits to patrons. Goldston's Beach is a popular resort having a large patronage. Defendants Womble, under permit from the Department of Conservation and Development, have erected and maintained a pier into the lake. The lake is much used for swimming and boating.

Defendant McSwain is the owner of a motorboat which was, in July 1954, operated for him by defendant Jessup. This boat is used to transport passengers on the lake. Defendants Womble permitted McSwain to dock his boat at their pier to receive and discharge passengers. For the exercise of this privilege McSwain paid Womble 25% of the gross revenue from the operation of his boat. There were no signs on the Womble pier announcing the fact that motor boats docked there.

tances from bathers and other boats. Reckless operation of a boat or operation of a boat in such manner as to endanger other person is pro-

Other beaches and concessions were operated by owners of other properties fronting on the lake. Some of these beaches and consessions adjoined the property of the defendants Womble.

Among the regulations issued by the Department were Nos. 20, 21, and 22, which provide:

"*Regulation No. 20.* BOATS, WHERE PROHIBITED. Except to leave or go to dock, pier, or other landing place, no motor boat shall be operated within a designated or marked safety zone. When within the safety zone, every motor boat shall be under full control. When within the safety zone, every motor boat shall be operated at its minimum operating speed and shall leave and go to dock, pier, or other landing place on a course parallel to and immediately adjacent to dock, pier, or other landing place, except as provided in *Regulation No. 31.* WATER SKIING, surfboarding, etc.

"*Regulation No. 21.* PERMISSION TO LAND REQUIRED. No commercial boat shall dock or land at any pier without first having obtained written permission to do so from the owner thereof. No private boat shall dock or land at any pier without first having obtained permission to do so from the owner thereof.

"*Regulation No. 22.* RECKLESS OPERATION PROHIBITED. All boats must at all times be operated at safe speeds and at safe distances from bathers and other boats. Reckless operation of a boat or operation of a boat in such manner as to endanger other person is pro-

hibited. 'No person under the influence of intoxicants shall operate a boat." ·

· Plaintiff alleged:  About 10:00 a.m. on 25 July 1954 his· intestate was swimming at Goldston's Beach "in an· area between the pier and buoys erected by the North Carolina Department of Conservation & Development and *designated as a swimming·area by the defendants* when and where a Criss(sic) Craft Motor boat owned by Fulton Mc-Swain, and operated by Carl Jessup, an employee of defendants,·with paying passengers thereon and while in the regular course and scope of his employment as driver of said commercial motor boat and as a common carrier, hauling passengers for hire, ran into plaintiff's intestate, striking him with the propeller and killing him." (Italics supplied.)

McSwain, answering this allegation of the complaint, admitted: "Robert Earl Williams was swimming in the waters of White Lake in an area between the Goldston Pier and buoys placed and maintained by the North Carolina Department of Conservation and Development, and that while so doing he was struck by a motor boat owned by Fulton McSwain and operated by Carl Jessup." Except for the admission thus made, the quoted allegation of plaintiff was denied by McSwain. Defendants Womble admitted: "Robert Earl Williams was swimming in the waters of White Lake in an area between the pier erected by these answering defendants under permit with the North Carolina Department of Conservation and Development and near buoys which had been erected and which were maintained by the North Carolina Department of Conservation and Development and that while so doing he was struck by a motor boat operated by Carl Jessup . . ." Otherwise the defendants Womble denied the quoted allegation of plaintiff.

· ·Plaintiff alleged and defendants admitted that they had not roped off or marked by buoys or otherwise any route for boats to use in approaching or leaving Womble's pier. Regulation No. 32, promulgated by the Department, prohibits the erection of any structures or buoys except upon the issuance of a permit by the Department. The complaint alleges and the case on appeal states that the deceased was struck by the propeller of the McSwain boat. It is admitted that the injuries thus inflicted resulted in death. The buoys put out by the Department in 1954 were floating barrel type. The buoys were about 75 feet beyond the end of the Womble pier.

The complaint particularizes the negligence of defendants in this manner: (1) Carl Jessup "proceeded from the pier towards the buoys in a careless, reckless and negligent manner, under the circumstances and without keeping a proper lookout for bathers within the bathing area and with a heedless and wanton disregard of the rights and safety

of said bathers"; (2) he was negligent in operating the boat at a speed greater than was reasonable and prudent under the circumstances and conditions then existing and contrary to and in violation of the regulations promulgated by the Department of Conservation and Development; (3) he operated the boat where he well knew bathers were likely to be and were swimming; (4) he operated the boat at a speed and in a manner so that he could not observe swimmers in the water for a distance in which said motorboat could be stopped; (5) he operated the boat without keeping a proper and careful lookout; (6) he was a minor under eighteen years of age, had been operating a boat for two years, defendants knew that he was of a careless and reckless nature, was not mature, and was not a fit and suitable person to operate a commercial speed boat on White Lake; (7) defendants failed to erect signs on the premises warning bathers that boats operated in the swimming area.

The allegations are ample to support the verdict in plaintiff's favor; but it is not sufficient merely to allege negligent conduct. Plaintiff has the burden of offering evidence to support his allegations. Hence the crucial question in this case: Is there any evidence to support any of the allegations of negligence? If so, which?

Plaintiff argues that the defendants Womble are liable because of their failure to warn their invitee, plaintiff's intestate that McSwain's motorboat docked at their pier, that he should keep a lookout for it, and upon its approach should give way to it. To maintain this position, plaintiff must show that his intestate was in fact an invitee of defendants Womble.

"The law imposes liability on the owner of property for injuries sustained by an invitee which are caused by dangerous conditions known, or which should have been known, by the property owner but which are unknown and not to be anticipated by the invitee." *Harris v. Department Stores Co.*, 247 N.C. 195.

"A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he

"(a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them, and

"(b) has no reason to believe that they will discover the condition or realize the risk involved therein, and

"(c) invites or permits them to enter or remain on the land without exercising reasonable care

"(i) to make the condition reasonably safe, or

"(ii) to give a warning adequate to enable them to avoid the harm without relinquishing any of the services which they are entitled to

receive, if the possessor is a public utility." Restatement Torts, sec. 343.

"An invitee is one who goes upon the property of another by the express or implied invitation of the owner or the person in control. A license implies permission and is more than mere sufferance; an invitation implies solicitation, desire, or request." *Jones v. R.R.*, 199 N.C. 1, 153 S.E. 637; *Adams v. Enka Corp.*, 202 N.C. 767, 164 S.E. 367; *Pafford v. Construction Co.*, 217 N.C. 730, 9 S.E. 2d 408; 65 CJS 508; 38 Am Jur 754.

The evidence in this case discloses that plaintiff's intestate was injured in one of the State's public parks under the control and management of a State agency. True the evidence shows the defendants Womble provided facilities by which persons might make use of and enjoy the recreational opportunities provided by the State; but Womble was not the only person who provided these facilities. There is evidence that others provided similar facilities. There is no evidence that plaintiff's intestate entered the waters of White Lake from the bathing beach maintained by Womble. There is no evidence that plaintiff's intestate ever intended to make use of Womble's bathing beach. It is alleged, but there is no evidence to support the allegation, that the place where plaintiff's intestate was injured *was designated by defendants as a swimming area*. The evidence is that the buoys were put out by the Department of Conservation and Development.

The regulations did not permit defendants Womble to erect any sign in the waters of White Lake or to mark or chart any area prohibited to boats in their use of White Lake. The right to so act was reserved by the Department. To impose liability on Womble, it was necessary to show not only that plaintiff's intestate was an invitee or licensee of Womble and had entered a place under the control or supervision of Womble, but the use of this area was hazardous and that plaintiff's intestate could not reasonably be expected to know and appreciate and understand the hazard. The evidence does not disclose the size of the McSwain boat. The fact that it was engaged regularly in carrying passengers would indicate that it was of substantial size. Regulations promulgated by the Department required motorboats, when approaching or leaving a pier, to do so on a course parallel with the pier and to be operated at a minimum speed. It is alleged, but there is no evidence to show, that the injury was inflicted by a boat departing from Womble's pier. There is not the slightest suggestion in the evidence that plaintiff's intestate could not or did not see this motorboat. The evidence offered by plaintiff fails to disclose any breach of duty on the part of the defendants Womble to plaintiff's intestate. Because of that failure Womble's motion to nonsuit should have been allowed.

Plaintiff asserts that McSwain was negligent in numerous respects. Does the evidence which has been introduced support any of these

allegations? It is alleged that Jessup, captain and master of McSwain's boat, was "of a careless and reckless nature and was not mature and was not a fit and suitable person to operate a commercial speed boat on White Lake . . ." This allegation was denied. Plaintiff offered no evidence to support it. It is alleged that the boat was being operated at a speed greater than was reasonable and prudent. The record is barren of any evidence as to the speed of the boat.

One who operates a boat in waters frequented by bathers or other boats is obligated to maintain such lookout as a reasonably prudent person would exercise to discover and avoid injury to others lawfully using the waters. The operator is chargeable with the knowledge which such a lookout would disclose. Did Jessup, as master of the boat, fail to maintain a proper lookout as plaintiff alleges? The record furnishes no answer unless it be found in the fact that the boy was struck by the propeller of the boat. The evidence is that the injury was inflicted near a barrel-type buoy. Was the bather hidden from view by this buoy? The fact that he was struck by the propeller indicates that he was submerged at the time of the injury. Did the boy swim under water from behind the buoy into the path of the approaching boat? One can, on this record, only speculate as to whether a proper lookout would have disclosed the youth in the path of the boat. Without some warning to the contrary, the duty of those in charge of a boat to maintain a lookout is limited to objects on or above the surface of navigable waters.

Plaintiff's intestate, as a citizen of the State, had a right to bathe in White Lake and enjoy the recreational facilities provided by the State. McSwain, the owner of a motorboat licensed by the Department of Conservation and Development, likewise had a right to operate his boat on the waters of White Lake and to provide boat rides to other citizens of the State who preferred that form of recreation to swimming. Each was chargeable with the duty of acting as a reasonably prudent man under existing conditions. The burden rested on the plaintiff to establish fault on the part of defendants proximately causing the injury. We think the language of Brogden, J., is appropriate to the picture painted by this record. He said: "This testimony creates a legal fog of such low visibility as to prevent the watchful and alert eye of the law from discovering liability for actionable negligence." *Adams v. Enka Corp., supra; Whitson v. Frances,* 240 N.C. 733, 83 S.E. 2d 879; *Smith v. Oil Corp.,* 239 N.C. 360, 79 S.E. 2d 880; *Sowers v. Marley,* 235 N.C. 607, 70 S.E. 2d 670; *Mitchell v. Melts,* 220 N.C. 793, 18 S.E. 2d 406; *Pack v. Auman,* 220 N.C. 704, 18 S.E. 2d 247.

The motion to nonsuit made by defendants Jessup and McSwain was soundly lodged and should have been allowed.

The judgment is

Reversed.