**Robert D. DARDEN, Jr., ancillary administrator of the estate of James W. Manhart, deceased; Oksana M. Manhart; Mark Manhart; Ingrid Manhart; and Peter Manhart, Plaintiffs,**

v.

**PEBBLE BEACH REALTY, INC.; McNeill–Spectrum, Inc.; McNeill Realty and Construction Company of Emerald Isle, Inc.; Spectrum Investment Group, Inc.; Pebble Beach Homeowners Association, Inc.; Edward D. Buckham; Marie J. Buckham; and JMD Associates, Inc., Defendants.**

No. 91–69–CIV–4–H.

United States District Court, E.D. North Carolina, New Bern Division.

July 30, 1993.

---

Warren J. Davis, J. Jefferson Newton, Newton & Dodge, Beaufort, NC, for plaintiffs Robert D. Darden, Jr., Ancillary Adm'r of Estate of James W. Manhart, M.D., Deceased, Estate of James W. Manhart, Oksana Mensheha Manhart, Mark NMI Manhart, Peter NMI Manhart, Ingrid NMI Manhart.

Marshall A. Gallop, Jr., Battle, Winslow, Scott & Wiley, Rocky Mount, NC, for defendant Pebble Beach Realty, Inc., aka Island Resorts Realty, aka Pebble Beach Resort, aka Pebble Beach, aka McNeill Spectrum Island Resorts.

Kenneth M. Kirkman, Kirkman, Whitford, Kirkman & Jenkins, Morehead City, NC, for defendant McNeill–Spectrum, Inc., aka McNeill Spectrum Real Estate & Const. Co., aka JMD Associates, Inc., aka McNeill Realty, aka McNeill Realty & Const. Co., aka McNeill Spectrum Real Estate & Const., aka McNeill Spectrum, Inc. Real Estate & Const. aka McNeill Spectrum Island Resorts.

Susan H. McIntyre, Francis Blackwell Stith, Stith & Stith, New Bern, NC, for defendant McNeill Realty Const. Co. of Emerald Isle, Inc., aka McNeill Realty, aka McNeill Realty & Const., aka McNeill Realty & Const. Co., aka McNeill Spectrum Real Estate & Const., aka McNeill Spectrum Real Estate & Const. Co., aka McNeill Spectrum Island Resorts.

Neil Brian Whitford, Kenneth M. Kirkman, Kirkman, Whitford, Kirkman & Jenkins, Moreheads City, NC, for defendant Spectrum Inv. Group, Inc., aka Spectrum Real Estate, aka Spectrum Real Estate & Const., aka Spectrum Real Estate & Const. Co., aka McNeill Spectrum Real Estate & Const., aka McNeill Spectrum Real Estate & Const. Co., aka McNeill Spectrum Island Resorts.

Douglas Fraser McIntosh, Wilmington, NC, for defendants Pebble Beach Homeowners' Ass'n, Inc., aka Pebble Beach Homeowners' Ass'n, aka Pebble Beach Property Owners Ass'n, Inc., aka Pebble Beach Property Owners Ass'n, aka Pebble Resort, aka Pebble Beach and Pebble Beach Resorts, Inc., aka Pebble Beach, aka Pebble Beach Resort.

Ronald C. Dilthey, Patterson, Dilthey, Clay, Cranfill, Sumn, Patricia L. Holland, Cranfill, Sumner & Hartzog, Raleigh, NC, for defendants Edward D. and Marie J.

Buckham, aka Edward Buckman Rental, dba Edward Buckham Rental.

Richard L. Stanley, Beaufort, NC, for defendant Town of Emerald Isle, N.C.

Neil Brian Whitford, Kirkman, Whitford, Kirkman & Jenkins, Moreheads City, NC, for defendant JMD Associates, Inc.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter is before the court on the following motions for summary judgment filed by the defendants: Pebble Beach Realty, Inc.'s motion for summary judgment filed February 8, 1993; Marie J. Buckham and Edward D. Buckham's motion for summary judgment filed February 12, 1993; McNeill Realty and Construction Company of Emerald Isle's motion for summary judgment filed February 24, 1993; McNeill–Spectrum, Inc., Spectrum Investment Group, Inc., and JMD Associates, Inc.'s motion for summary judgment filed March 2, 1993; and Pebble Beach Homeowners Association, Inc.'s motion for summary judgment filed March 2, 1993. The Honorable Alexander B. Denson, United States Magistrate Judge, entered a Memorandum and Recommendation ("M & R") on June 18, 1993, recommending that the defendants' motions be granted. The plaintiffs filed timely objections to the M & R, and the defendants responded. This matter is now ripe for ruling.

Plaintiffs, the administrator of the estate and family of Dr. James W. Manhart, brought this wrongful death action against the owners of a beach-front condominium, the condominium homeowners' association, and the rental agency representing the condominium owners after Dr. Manhart drowned in the Atlantic Ocean. The plaintiffs allege that the defendants, as providers of beach resort rental property, had a duty to provide a safe swimming environment in the Atlantic Ocean and a duty to warn of the dangers of ocean swimming. The complaint alleges that the defendants were negligent in failing to adequately delineate a safe swimming area, failing to provide depth indicators, failing to provide a smooth, regular bottom free from holes and depressions, fail-ing to provide a bottom with a smooth and regular slope, failing to provide life guards on the beach, and failing to provide and maintain rescue facilities and equipment on the beach.

The defendants moved for summary judgment on numerous and varied grounds. The Magistrate Judge based his recommendation on the defense common to each defendant and did not address the more specific defenses pled by the defendants. The Magistrate Judge concluded that no defendant violated any duty to the decedent Mr. Manhart because:

A. No defendant exercised any dominion or control over the bed or waters of the Atlantic Ocean in which decedent drowned;

B. No defendant had any duty or right to make the ocean bottom smooth or to cause it to have any particular slope;

C. No defendant had any duty to provide lifeguards or safety equipment on a public beach;

D. No defendant had any duty to mark the depth of the ocean, which depth varied constantly with the tides and the wave activity;

E. No defendant had any duty to delineate any swimming area in the ocean;

F. No defendant had any knowledge superior to the decedent about the tides and currents at the moment of his fatal accident and thus there was no duty to warn him about any such condition;

G. No defendant had any duty to warn the decedent about the obvious fact that ocean swimming can be dangerous.

M & R at 3–4. The Magistrate Judge further found that no defendant breached any warranty to the decedent. In accordance with these conclusions, the Magistrate Judge recommended that summary judgment be granted and this action be dismissed.

Plaintiffs raise the following objections to the M & R:

1) The Magistrate Judge misapplied the law of negligence regarding the duty of care owed by the Defendants;

2) The Magistrate Judge misapplied the law of negligence therefore improperly granting summary judgment for the Defendants;

3) The Magistrate Judge erroneously found facts against Plaintiffs;

4) The Magistrate Judge misapplied the summary judgment standard of review;

5) The Magistrate Judge erroneously misconstrued Plaintiffs' theories of recovery;

6) The Magistrate Judge otherwise erred as a matter of law in granting summary judgment to the Defendants.

Pls.' Obj. to Magistrate Judge's M & R at 1.

In light of the plaintiffs' objections, the court has carefully reviewed the M & R, the parties' memoranda on the motions for summary judgment, and the parties' memoranda on the plaintiffs' objections. Based upon this review, the court agrees with the findings and conclusions of the Magistrate Judge and hereby adopts the M & R as its own.

 The court finds as a matter of North Carolina law that the defendants had no duty to maintain a safe swimming area in the Atlantic Ocean, provide lifeguards or safety equipment on the public beaches of North Carolina, or warn the decedent of the inherent dangers of ocean swimming. First, as fully discussed by the Magistrate Judge, the defendants exercised no dominion or control over the waters of the Atlantic Ocean or the public beaches of North Carolina.

Second, the law imposes no duty on an ocean front landowner to protect invitees from the natural hazards of the ocean. The plaintiffs' reliance on authorities supporting aquatic injury liability of housing providers is misplaced. The majority of cases cited by the plaintiffs involved the operation of swimming pools, which this court finds clearly distinguishable from the Atlantic Ocean. The remainder of cases cited by the plaintiffs involving natural lakes, rivers, or portions of the sea involved "the rule of imposing liability upon the proprietor of a place of public amusement." Pls.' Mem. of Law Supporting Obj. at 7 (quoting *Perkins v. Byrnes*, 364 Mo.

849, 269 S.W.2d 52, 55 (Mo.1954)). None of the defendants in this case were proprietors of a place of public amusement, or had appropriated any part of the Atlantic Ocean for use in a private venture. Simply providing luxurious beach-front housing accommodations is not an appropriation of a part of the Atlantic Ocean for use in a private venture.

Third, as amply stated by the Magistrate Judge, "[a] duty to warn others of danger presupposes that the warner has a superior knowledge of some danger." M & R at 6. Ocean conditions are constantly fluctuating and are determined by numerous uncontrollable, natural phenomena. The plaintiffs have failed to present any evidence that the defendants had any superior knowledge of the conditions at the time of Mr. Manhart's death.

Furthermore, the court notes that the record lacks any evidence of the cause of Mr. Manhart's drowning or the conditions in the ocean at the time of his death. The court finds no evidence that there were hidden undercurrents, fluctuating water levels, or other dangerous conditions in the waters that caused the tragic demise of Mr. Manhart.

Therefore, for the foregoing reasons and the reasons stated in the M & R, the court finds that there is no legal basis for liability in this action. Accordingly, the court hereby GRANTS the defendants' motions for summary judgment and ORDERS that this action be dismissed.

## MEMORANDUM AND RECOMMENDATION

DENSON, United States Magistrate Judge.

This action arises out of the tragic drowning of Dr. James W. Manhart in the Atlantic Ocean at Emerald Isle on June 19, 1989. The critical uncontroverted facts are that Dr. Manhart was a naval reserve medical officer and was assigned duty at Camp Lejeune in June, 1989. He rented a condominium at the Pebble Beach complex and his wife and children accompanied him for a family beach vacation. They arrived on Sunday, June 18, checked in, and walked on the beach. The

next day, Dr. Manhart reported to his duty station and returned to the condominium to join his family late that afternoon. At about 5:00 p.m. that Monday afternoon, Dr. Manhart and his son, Mark, then 13 years old, went for a swim in the ocean. They waded out to a point where the water was about up to Dr. Manhart's waist. Mark was very near his father and noticed that he was floating face down, lifting his head out of the water. Mark later said "I was close enough that I could hear him and I could hear him gasp for breath. I asked dad if he was OK and he said no." At some point a wave hit Dr. Manhart in the back and knocked off his prescription goggles. Mark and a nearby surfer pulled Dr. Manhart in to the shore and help was summoned. Although attempts were made, tragically, he could not be resuscitated.

Dr. Manhart was a good swimmer and had swum in the Atlantic and Pacific oceans, Lake Michigan and the Caribbean. He swam almost daily in a swimming pool in his hometown. On one occasion while he was swimming in the Caribbean he experienced a sort of panic episode in which he was flailing ineffectively. His wife, a physician, initially believed this fatal incident was a recurrence of that episode, but she later disavowed that belief.

This action for Dr. Manhart's wrongful death was brought against the condominium owner, the realty agency who booked the rental, the condominium homeowner's association and other defendants. All defendants have filed motions for summary judgment that are now before the court. While the defendants have pled various defenses this recommended disposition is based on the defense common to each and so they are all treated collectively.

## SUMMARY JUDGMENT STANDARD

A court may grant summary judgment only if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In this analysis, the court must accept all of a non-movant's evidence as true and will view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985). Here, there is no dispute as to the critical facts discussed above and it is an issue of law as to whether, under those facts, the movants are entitled to summary judgment.

## ANALYSIS OF CLAIMS

The undersigned concludes that there is no theory under North Carolina law on which plaintiff can establish liability against any defendant and that summary judgment should be granted dismissing this action for the following reasons:

I. No defendant violated any duty to the decedent because:

A. No defendant exercised any dominion or control over the bed or waters of the Atlantic Ocean in which decedent drowned;

B. No defendant had any duty or right to make the ocean bottom smooth or to cause it to have any particular slope;

C. No defendant had any duty to provide lifeguards or safety equipment on a public beach;

D. No defendant had any duty to mark the depth of the ocean, which depth varied constantly with the tides and the wave activity;

E. No defendant had any duty to delineate any swimming area in the ocean;

F. No defendant had any knowledge superior to the decedent about the tides and currents at the moment of his fatal accident and thus there was no duty to warn him about any such condition;

G. No defendant had any duty to warn the decedent about the obvious fact that ocean swimming can be dangerous.

II. There was no negligent infliction of emotional distress because there was no negligence.

III. No defendant breached any warranty to the decedent.

Therefore, as a matter of North Carolina law, there can be no recovery either in tort or contract and this action should be dismissed. While this seems patently obvious, there is nevertheless a duty on the court to point out this law. The court will do this by reviewing the liability allegations of the complaint, beginning with the allegations of negligence.

*Negligence Allegations Requiring
Dominion Or Control Over the
Waters of The Atlantic*

The complaint alleges the defendants were negligent in that:
9. d. The Defendants failed to adequately delineate the swimming area with ropes, lifelines, lifebuoys or markers;
 e. The Defendants failed to provide depth indicators or markers;
 g. The Defendants failed to provide a smooth, regular bottom in the designated swimming area;
 h. The Defendants maintained a designated swimming area with a bottom that was uneven and irregular, with deep holes and depressions;
 i. The Defendants failed to provide a bottom with a smooth, uniform slope in the designated swimming area;
 j. The Defendants failed to provide a one (1) to fifteen (15) foot slope, or at least a one (1) to twelve (12) foot slope, for the bottom of the designated swimming area;

The State of North Carolina owns the beaches bordering the Atlantic Ocean from the high water line, *Carolina Beach Fishing Pier, Inc. v. Town of Carolina Beach,* 277 N.C. 297, 302, 177 S.E.2d 513, 516 (1970), seaward for three miles. 43 U.S.C. § 1312. The land underneath those waters cannot be conveyed to a private individual free of the public trust. *U.S. v. 1.58 Acres of Land,* 523 F.Supp. 120 (D.Mass.1981). Thus, contrary to plaintiffs' incredible allegations, no defendant in this action was entitled to exercise any control over the waters of the Atlantic Ocean or its seabed. Therefore, even were it possible in the open ocean—and it obviously was not—no defendant could have: delineated a swimming area with ropes, etc.; made the ocean floor smooth; or have a one to fifteen or one to twelve foot slope or done any of the things which plaintiffs say they should have done. These contentions ask the impossible and are ludicrous. They are without basis in North Carolina law.

*Negligence Allegations Over
Failure to Warn*

Plaintiffs allege as negligence:
9. a. The Defendants failed to warn the Decedent that the aforesaid waters on the date above stated had hidden undercurrents and were dangerous and unsafe for swimming;
 b. The Defendants failed to have any signs, posters, or other warnings or safeguards at this place to warn persons using the aforesaid waters that the waters were dangerous and unsafe for swimming;
 f. The Defendants failed to warn of fluctuating water levels or depths;

A duty to warn others of danger presupposes that the warner has a superior knowledge of some danger than the person to be warned. There is no duty to warn of an obvious condition which had been or should have been detected by the person to be warned. *Wrenn v. Hillcrest Convalescent Home, Inc.,* 270 N.C. 447, 154 S.E.2d 483 (1967); *Jacobs v. Hill's Food Stores, Inc.,* 88 N.C.App. 730, 364 S.E.2d 692 (1988). Any person who has any knowledge of the oceans knows that the ocean conditions near the shore are constantly changing because of tides, currents, winds, gravitational pull, and temperature fluctuations. Thus, swimming conditions in the ocean vary, literally, minute by minute. Tides and undercurrents appear and disappear, often invisible. If a sign were to be posted about these conditions one minute it might be outdated the next. Dr. Manhart was a naval medical officer with experi-

ence in swimming in the Atlantic as well as the Pacific Ocean. It is absurd to argue, as plaintiffs' counsel do, that any of these defendants should have met Dr. Manhart at the condominium and explained to him that there were sometimes hidden undercurrents in the ocean, that the ocean bottom was irregular, and that the depth of the ocean water fluctuated because of tides and waves and for all these reasons it might be dangerous to swim in the ocean. No doubt that Dr. Manhart, as an intelligent man, would have thought such a conversation ridiculous. Because there is no evidence that any defendant had any knowledge superior to the decedent as to the swimming conditions at the time of his fatal accident, there was no duty on any such defendant to give any warning.

*Allegations Concerning Failure to Provide Lifeguards or Safety Equipment*

The complaint further alleges the defendants were negligent in that:

9. c. The Defendants failed to have on the beach, where the Decedent was, any lifeguard or other employees to properly supervise those invited to use the adjacent waters;

k. The Defendants failed to have on the beach, where the Decedent was, any facilities or appurtenances or appliances or equipment to rescue or render first aid to the Decedent;

l. The Defendants, knowing of a condition that might endanger the safety of invitees, failed to excuse (sic) the duty to protect the Decedent;

The essence of these allegations is that the defendants were negligent in not providing lifeguards or safety equipment. In order for there to be a negligent act or omission, the defendant must violate a duty owed to the plaintiff. If there is no duty, there can be no negligence.

In North Carolina, landowners have no duty to protect children from natural bodies of water adjacent to their property. *Roberson v. City of Kinston*, 261 N.C. 135, 134 S.E.2d 193 (1964); *Fitch v. Selwyn Village*, 234 N.C. 632, 68 S.E.2d 255 (1951). While *Roberson* and *Fitch* were decided in the context of the attractive nuisance doctrine, the reasoning applies to the context at hand. The attractive nuisance doctrine gives children protection from their general lack of experience and propensity for curiosity. If children are not afforded protection by landowners who own property adjacent to natural bodies of water, it would be nonsensical to afford adults that protection.

The plaintiffs rely heavily on other cases from outside North Carolina. Even if they controlled, (and, of course, they do not), none establishes a duty for private persons to provide lifeguards or safety equipment on a public beach. Plaintiffs cite *Kaczmarczyk v. Honolulu*, 65 Haw. 612, 656 P.2d 89 (1982), for the proposition that "[p]roprietors of a bathing resort, in discharging the duty of ordinary care for the safety of patrons, *may* be obliged to keep someone on duty to supervise patrons and rescue any apparently in danger." *Id.*, 65 Haw. at 617, 656 P.2d at 93 (emphasis added). This statement is hardly a rule of law. The proprietors "may be obliged" to supervise swimmers, on the other hand, they may not.

Nevertheless, the decision in *Kaczmarczyk* did not turn on what the proprietor may or may not have been obliged to do. The court, in its very next statement after the provision quoted above, states that "even where a municipality [the proprietor] is under no duty to provide lifeguard services, ... if it voluntarily assumes this protective responsibility it has a duty to perform those services with reasonable care." *Id.* The defendant had voluntarily assumed the responsibility in *Kaczmarczyk*. This assumption of duty was the factor that decided that case. *Kaczmarczyk* therefore is of no help to the plaintiffs because it did *not* establish a requirement to provide lifeguards.

Plaintiffs also cite a North Carolina case for the proposition that the proprietors of a bathing resort *"may* be obliged to keep someone on duty to supervise bathers." *Adams v. Enka Corp.*, 202 N.C. 767, 164 S.E. 367 (1932) (*quoting* 22 A.L.R., p. 636) (emphasis added). Despite that language, the court's holding was that the owners of the private lake, who installed a diving board and built a beach, were *not liable* for the death of

swimmer on their premises, despite providing no lifeguard or safety equipment.

The plaintiffs rely heavily on case law pertaining to the obligation proprietors of "bathing resorts" may or may not owe to their patrons. Even if this "obligation" were a strict duty, Pebble Beach Condominiums would have to be classified as a "bathing resort" for the obligation to exist. In order to connect Pebble Beach Condominiums with this "obligation," the plaintiffs state matter of factly that "it is clear that the condominium complex known as Pebble Beach was a 'bathing resort' within the meaning of the foregoing general rule." (Plaintiffs' Memorandum of Law in Response to the Buckham's Motion for Summary Judgment at 4.) The only authority cited for this proposition is *Tarshis v. Lahaina Investment Corp.*, 480 F.2d 1019 (9th Cir.1973).

The issue in *Tarshis* had nothing to do with whether or not the defendant hotel was classified as a "bathing resort" or not. The defendant in that case was a resort hotel located "along a 3–mile *secluded* white sand beach." *Tarshis*, 480 F.2d at 1020 (emphasis added). Furthermore, the defendant admitted that the surf was unusually dangerous on the date in question. The issue in *Tarshis* was whether a person of ordinary intelligence should have been aware of the abnormally dangerous surf conditions in the absence of a warning. Even if *Tarshis*, a Ninth Circuit case applying Hawaiian law, controlled in the case *sub judice*, it does not stand for the proposition that a condominium complex located adjacent to the ocean is a "bathing resort" as a matter of law.

Under the law that applies to this case, Pebble Beach Condominiums do not constitute a "bathing resort." In *Phillips v. Orr*, 152 N.C. 583, 67 S.E. 1064 (1910), the North Carolina Supreme Court held that a lake located in a public park, and open to the public for swimming, was not a bathing resort. The Court upheld the trial court's grant of nonsuit at the close of the evidence, despite the defendants' rental of bathing suits to swimmers and the construction of a shack for bathers to change into swimming attire. The defendants were not liable for the drowning death of a teenager, despite the failure to provide a lifeguard or safety equipment near the lake.

The court found that the defendants "had no control over the park or the lake, by lease or otherwise. . . . Any person desiring to bathe in the lake properly clothed could do so without the permission of either of the defendants, and without paying toll to them. The defendants had no lease upon the lake or the park, nor any exclusive privileges of bathing, furnishing bathing suits, or any control over those bathing in the lake." *Phillips*, 152 N.C. at 586, 67 S.E. at 1065.

The plaintiff in *Phillips* relied primarily on the rental of bathing suits to establish the defendants' liability. *Id.* The Court noted that the defendants "could as well have furnished these from an office or store in the city a half mile away." *Id.* Likewise, the plaintiffs *sub judice* rely entirely on the relationship the defendants have with rental property located adjacent to the ocean.

The rental of property located adjacent to and in the vicinity of the ocean is a large business. Property on the beachfront as well as property a half mile away from the beach is rented everyday. If the decedent had rented property on the intracoastal waterway, but chose to swim in the ocean, would the owners of that property be liable for his death? Such a result would be untenable. More importantly, the logic of *Phillips* does not countenance such a result.

The *Phillips* court mentioned that the defendants in that case "did no advertising . . . [nor] solicited any person to bathe in the waters of the lake." *Id.* Plaintiffs in the matter before this court argue that a brochure concerning the Pebble Beach Condominiums invites renters to swim in the ocean, and that this brochure imposes on the defendants the status of a "bathing resort" and a concomitant duty to protect its renters from the ocean. The finding that the defendants did no advertising was not crucial to the holding in *Phillips*. It was simply an additional factor that the Court listed to add weight to its decision that the defendants did not operate a bathing resort.

If the plaintiffs' argument is accepted, the mere mention of the ocean in an advertising

brochure for rental property would require the owners of the land to provide safety equipment and a lifeguard for his renters. What if the rented land was ten minutes away from the ocean, but a brochure advertised the proximity of the beach and invited renters to swim in the ocean? What if a corporation relocates to the Research Triangle Park from Oklahoma, partly because a real estate agent touts an office building as being only two and a half hours from scenic beaches? Advertising the well-known fact that the ocean exists does not impose a duty on the part of the advertiser or agents of the thing advertised to provide safety equipment or lifeguards for the targets of the advertising.

There is no duty under North Carolina law for the owner of land adjacent to the ocean to provide lifeguards or safety equipment for the general public swimming in the ocean. That the decedent in this case was renting property adjacent to the ocean did not create a duty on the part of the landowners to protect him while he availed himself of the opportunity to swim in a public place.

The reasoning of *Laumann v. Plakakis*, 84 N.C.App. 131, 351 S.E.2d 765 (1987), is also applicable. In *Plakakis,* a business invitee of the defendant was injured while crossing a busy public street between the defendant's private parking lot and the defendant's store. The plaintiff sued the store for "her injuries as it knew that customers of its factory outlet frequently crossed English Road at the point where she crossed and failed to take any action to make the area safe by installation of warning signs, lights or a crosswalk." *Plakakis,* 84 N.C.App. at 133, 351 S.E.2d at 766. The court held that the defendant "had no duty to provide for a crossing guard, warning lights or other traffic control devices over a city street." *Plakakis,* 84 N.C.App. at 133, 351 S.E.2d at 767. Likewise, defendants in this action had no duty to provide a lifeguard or safety equipment on a public beach.

### Remaining Negligence Allegation

The sole remaining allegation of negligence is the general contention that "the Defendants were in all respects negligent", which is not a factual allegation but a legal conclusion reached only by plaintiffs' counsel.

Thus, each of the negligence allegations fails as a matter of law.

### Negligent Infliction of Emotional Distress

These claims fail because, *inter alia,* as shown above, there was no negligence.

### Warranty Counts

The only evidence plaintiffs adduce indicating a warranty was an advertising brochure that the Pebble Beach condominium complex had a placid beach with "blue waves with little white caps" where one could "swim in the ocean or relax by the indoor/outdoor pool." This does *not* amount to a warranty that condominium renters would not drown in the ocean. Thus, the warranty counts fail as a matter of law.

### Conclusion

Because plaintiffs have failed, as a matter of law, to establish any grounds of liability in tort or contract, IT IS HEREBY RECOMMENDED that all of the defendants' Motions for Summary Judgment BE ALLOWED. It is not necessary to analyze the remaining bases of the motions, such as contributory negligence and lack of proximate cause, although some of these very likely are additional grounds for summary judgment.

The sad, but inescapable truth is that Dr. Manhart, knowing that there was no delineated swimming area, knowing about tides and currents and other hazards of ocean swimming, and knowing that there were no lifeguards or safety equipment present, elected to swim in the ocean with his young son and inexplicably drowned in water that was only about waist deep. No one promised him that he could swim in the ocean safely. The cause of his death may have been a heart attack or something else. It remains a mystery, but it can be said as a matter of law that there is no evidence that it was caused by anyone's negligent or intentional act or omission. This action has no basis in law and should never have been brought. It has generated unnecessary expense in defending

it to this point and this expense should stop. The case should be dismissed.

This is the 17th day of June, 1993.