# Richmond

### Douglas Collins, Et Al. v. Jean W. Smith, Administratrix, Etc.

March 11, 1957.

Record No. 4631.

Present, Eggleston, Spratley, Buchanan, Miller, Whittle and Snead, JJ.

The opinion states the case.

*James H. Simmonds*, for the plaintiffs in error.

*Oren R. Lewis* (*C. Wynne Tolbert*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

Gregory David Smith and another infant, each four years of age, lost their lives by drowning in a water-filled excavation for a manhole in a street in Arlington County. It is charged that the accident occurred while the two children, together with others, were wading in surface water on the street after a storm, and fell into the excavation which was not provided with proper safeguards.

Jean W. Smith, mother of Gregory David Smith, qualified as administratrix of her son's estate and filed a motion for judgment against Oliver S. Hough and Douglas Collins, employees of Arlington County. A jury trial resulted in a verdict of $13,000 for the plaintiff, upon which judgment was entered over the objection of the defendants. We granted the defendants a writ of error.

The record disclosed that in June, 1954, Arlington County was engaged in constructing a storm sewer in North Pollard Street. Defendant Oliver Hough was the supervisor in charge of construction, and defendant Douglas Collins was the foreman in charge of the laborers on the job. In the process of construction it was necessary to install manholes for which several excavations were made in the street. The storm sewer pipe was laid and covered between the manhole excavations, with the ends of the pipe left open to prevent the pipe, in the event of rain "from floating out of the ground". The manhole excavations, left uncovered, were 42 inches wide, 4½ to 5 feet deep, and 6 feet long.

On Saturday, June 26th, the day of the tragedy, between the hours of 5 and 6 p. m., there was a heavy rain and wind storm which caused the surface rainwater to pour into the storm sewer, filling the manholes. The water spread out over Pollard Street, thus rendering in-

visible the outlines of the manhole excavations.

The mother of the deceased infant testified that after the rain ceased, about 6 p. m., she permitted Gregory and his sister to go out and play with other children. The Smiths lived in an apartment on Pollard Street, near the manhole which was the scene of the tragedy. Mrs. Smith did not see the child again until his body, along with that of the other child, had been pulled from the manhole about 8:30 p. m.

The motion for judgment alleged that Hough, supervisor in charge of construction, and Collins, the labor foreman, were charged with the duty of exercising reasonable care to see that the manhole in question was guarded by proper barricades both before and after the storm, and that their failure to perform their duty in this regard was the proximate cause of the death of plaintiff's decedent.

The case was tried on the theory that if the defendants failed to use reasonable care to have proper barricades placed around the manhole or in the event they failed to use reasonable care to see that the barricades were properly maintained after the storm, then in either event they were liable. Whereas, if reasonable care was used in these matters the defendants were not liable. In argument before us these were conceded to be the issues.

Fifteen assignments of error were filed. However, the defendants abandoned some of these and the points involved on appeal were narrowed to four questions which will be treated in the order in which they were stressed in argument at bar, the first being: Was there any credible evidence of negligence on the part of the defendants?

The plaintiff, in order to maintain this issue, called the defendant Douglas Collins as an adverse witness. He testified that Hough was the supervisor of construction and that he was the foreman of labor on the job; that it was his duty to erect proper barricades around the excavations; that on Friday afternoon, June 25th, he supervised the barricading of this and other excavations which had been dug in the street; that these holes had been barricaded by erecting on each of the four sides thereof a barricade consisting of two upright pieces with a 12-foot 1″ x 6″ board between them, with lanterns on either end of each barricade.

Collins further testified that no work was done between Friday and Monday but that he returned to the scene of construction on Saturday morning to check the lights on the barricades and to refill the lanterns; that at that time the lanterns were burning and the bar-

ricades were arranged so that it was impossible to walk into the hole without going over or under the barricades; that between 5 and 6 p. m. on Saturday there was a heavy wind and rain storm which caused the surface water from the rain to pour into the manholes of the storm sewer, filling up the manholes, causing the water to spread over Pollard Street and hiding the holes from view.

Collins further testified that the storm ceased about 6 p. m. and that the barricades had been blown down when he returned to the scene at 8:30 p. m. on the evening of Saturday, June 26th, after the drownings had occurred. He stated that he had not returned to the scene earlier because he was engaged in removing limbs and other debris from streets in the area which had been blown there by the storm.

Defendant Hough, also called by plaintiff as an adverse witness, testified that he was supervisor of construction and was familiar with the drainage area; that he left the hole open at both ends so that the pipe placed therein would not "float out" in case of rain. He stated that the barricades were erected on Friday afternoon but that he did not personally put up or check any of them either before or after the storm; that he instructed Collins, the foreman, to barricade the job "to make it safe * * * for the general public and the men that are working there themselves"; that he did not return to the scene of the tragedy on Saturday night after the storm.

Mrs. Helen Simpson, who lived in an apartment overlooking the scene, testified that barricades were not placed around the holes as stated by Collins; that there were only two barricades there prior to the storm, and that these were blown down by the wind.

Mrs. Marilyn Wright, another witness, also contradicted Collins in regard to the placement of the barricades. She stated that she lived in the vicinity and that only one barricade had been placed near the manhole before the storm.

On cross-examination Richard M. Wirt, Director of Public Works for the county, conceded that defendants Hough and Collins were in charge of and responsible for erecting and maintaining barricades around the open excavations and that it was their duty to check the barricades before and after the storm.

The defendants introduced several witnesses who were experts in this type of construction. They testified that the placement of four barricades around the hole, as described by Collins, was the usual and customary practice in the trade and considered adequate by con-

struction engineers. On cross-examination they conceded that a lesser number of barricades would be considered inadequate.

In ruling upon the sufficiency of the evidence on defendants' motion to strike, the trial court observed: "I think there was plenty of evidence that indicates there were only two barricades placed there. I am not so sure, on a motion to strike, that there isn't evidence to indicate there wasn't but one barricade there." The court was also of the view that a jury question was presented as to whether or not the defendants exercised ordinary care in not having gone to the scene of the accident after the storm "where they admittedly knew there was bound to be flood conditions".

We are of the opinion that the court properly ruled that it was a question for the jury whether the defendants, in the exercise of ordinary care, erected adequate barricades around the excavation before the storm, and whether they should have discovered and remedied any defects existing after the storm. *Andrews* v. *Appalachian Elec. P. Co.*, 192 Va. 150, 157, 63 S. E. 2d 750, 754.

[■] Defendants also contend that no causal connection was shown between the alleged negligence of the defendants and the drowning of the child; that the burden of proof was on the plaintiff to show how the drowning occurred; and that it was not shown how the child got into the hole and therefore the plaintiff cannot recover.

The evidence disclosed that after the storm this four-year-old child, along with other children, was seen wading and playing in the water in the vicinity of this manhole. The rainwater had filled the manhole and covered the street so that the outline of the hole was invisible. Later the bodies of the two children were taken from the hole. In this instance a jury question was presented, and under the evidence the logical inference for the jury to draw was that the child fell into the hole while wading in the street. Frequently material facts are not proved by direct evidence. A verdict may be properly based upon reasonable inferences drawn from the facts, and if facts are present from which proper inferences may be drawn this is sufficient. While the plaintiff must prove its case by a preponderance of the evidence, the weight or preponderance of evidence is its power to convince the tribunal which has the determination of the fact, of the actual truth of the proposition to be proved. *Bly* v. *Southern Ry. Co.*, 183 Va. 162, 175, 31 S. E. 2d 564, 570; *Northern Va. P. Co.* v. *Bailey*, 194 Va. 464, 470, 73 S. E. 2d 425, 429.

Defendants next assert that the court erred in permitting plaintiff's

counsel to continually question defendants' expert witnesses regarding the adequacy of the barricades around the manhole after the accident, as testified to by witnesses and shown by the picture exhibits. The record discloses that counsel for plaintiff did persist in questioning the expert witnesses regarding the adequacy of the barricades shown by the pictures which were taken after the storm had blown the barricades down. While counsel's question in this regard were properly the subject of objection and criticism, the jury could hardly have been misled by them and we see no reversible error in the assignment.

■ Defendants next complain of the court's granting Instruction No. 4, and the refusal of the court to grant Instruction "C" as offered by them which would have covered the objection to Instruction No. 4. The instructions read:

Instruction No. 4. (Given) "The Court instructs the jury that negligence, as used in these instructions, is want of ordinary care. Ordinary care is that degree of care which a person of ordinary prudence would use under the same circumstances, conditions, and surroundings. The care which under certain conditions is sufficient to be ordinary care, under other conditions may not be sufficient. Greater caution is demanded according as the circumstances demand greater caution.

"While evidence that a certain manner of doing a thing is the custom and usage in the occupation, together with any other pertinent facts and circumstances, may be considered in determining whether ordinary care was used in a given situation, such evidence of custom and usage alone is not conclusive."

Instruction "C". (Refused) "You are instructed that the defendants were not required to use such methods or such care that would insure or guarantee persons from being injured by the excavation. They were only required to use reasonable care to warn of the danger and protect the public therefrom; and the measure of such care is that customarily used in the trade or business of excavating. If you find that the defendants used such care in the premises as is customarily used by those doing similar work in the excavating business, then they were not negligent and you shall return a verdict for the defendants."

The defendants requested that the second paragraph of Instruction No. 4 be amended so as to embody the unbending test which they sought to invoke in their offer of Instruction "C" which was refused. We are of the opinion, under the evidence presented, that the second

paragraph of Instruction No. 4 properly stated the law, and that Instruction "C" was properly refused. The facts in the case do not present a situation where the unbending test rule can properly be employed. *Andrews* v. *Appalachian Elec. P. Co., supra,* 192 Va. at pp. 158, 159, 63 S. E. 2d at pp. 755, 756.

The defendants' final contention is that plaintiff's Instruction No. 3 was erroneous in that it placed too high a duty upon them. The instruction (with the parts objected to italicized) read:

"The Court instructs the jury that under the laws of Virginia it is the duty of persons installing storm sewers in public streets to take such measures as may be reasonably necessary in the exercise of ordinary care, to maintain the said streets *and adjacent areas* in a reasonably safe condition while the work of installation is in progress, to erect and maintain *adequate barricades* and *other warning and protective devices* surrounding open ditches and holes made during the installation, and *to take such other safety precautions* as may be reasonably necessary and proper so that persons, including children of tender ages, using the *adjacent areas* will not be injured or killed by reason of any unsafe or dangerous conditions created by such construction work.

"If you believe from a preponderance of the evidence in this case that the defendants failed to perform any or all of these duties during the installation of the storm sewer in the 500 block of North Pollard Street, they are guilty of negligence. If you further believe that, as a proximate result of their negligence, Gregory David Smith stepped or fell into an open ditch or hole made during the course of the storm sewer installation and was drowned, your verdict shall be for the plaintiff and you shall award damages in accordance with Instruction 6."

The attorney for the defendants, in stating his exceptions to the granting of this instruction, contended that it did not state the proper degree of care required in the circumstances; that "the only degree of care which is required is that of ordinary care to provide *reasonably* adequate warnings for the protection of persons using the highway or street at the point of the accident"; and further that "there is no showing of 'any other warning or protective devices' which should have been used by the defendants in this case. Also there is no duty shown to use 'other safety precautions' as may be reasonably necessary"; and that "there is no requirement that the defendants make the adjacent area safe".

Here the issue presented was whether these defendants used reasonable care with respect to the particular excavation. The instruction as given told the jury that it was the duty of the defendants (1) to maintain the said streets and adjacent areas in a reasonably safe condition; (2) to erect and maintain adequate barricades instead of using reasonable care to do so; and (3) to take such other safety precautions so that persons using the adjacent areas would not be injured or killed. The instruction went beyond the issues in the case and put upon the defendants not only a general duty with respect to streets, which they did not have, but also put upon them a particular duty with respect to the excavation in question which was too broad. The instruction as worded practically made the defendants insurers of the safety of the child.

In argument before the jury, the attorney for the plaintiff seized upon that portion of the instruction requiring the defendants to "take such other safety precautions". He argued that Instruction No. 3 required the defendants to "take such other safety precautions as may be reasonably necessary and proper so that persons, including children of tender ages, using the adjacent areas will not be injured or killed by reason of any unsafe or dangerous conditions created by such construction work." This part of the instruction was singled out and stressed in argument. And again, commenting on this, the attorney said: "The Court tells you unconditionally under the law, that there must be such other safety precautions as may be reasonably necessary and proper so that persons or children of tender ages * * * will not be injured or killed", etc.

It is evident that plaintiff's attorney made the most of the instruction. The instruction should have dealt with the particular excavation involved and should have stated, as contended by the defendants, that it was their duty only to maintain *reasonably* adequate barricades around same; and the phrases "other warning and protective devices", and "such other safety precautions" should have been deleted. The jury should not have been permitted to speculate upon what "other warning and protective devices" or "other safety precautions" should have been employed.

We are of the opinion that the giving of Instruction No. 3 constituted reversible error, and for that reason the judgment is reversed and the case remanded for a new trial.

*Reversed and remanded.*