VALERIA ROBERSON, ADMINISTRATRIX OF THE ESTATE OF EARLINE ROBERSON, DECEASED v. THE CITY OF KINSTON, NORTH CAROLINA, A MUNICIPAL CORPORATION, AND THE HOUSING AUTHORITY OF THE CITY OF KINSTON, NORTH CAROLINA, A MUNICIPAL CORPORATION.

(Filed 17 January 1964.)

**1. Negligence § 36—**

Since the attractive nuisance doctrine generally is not applicable to natural bodies of water, and since the owner of land is not under duty to erect a fence or other obstruction to protect small children from obtaining access to a branch or creek flowing in its natural state, a Housing Authority may not be held liable for the death of a child of one of its tenants who

drowned when she fell into a stream, swollen by heavy rains, flowing adjacent the property.

**2. Municipal Corporations § 12;    Waters and Water Courses § 1—**

A hastening of the flow of surface waters necessarily results from the construction of streets and gutters by a municipality, and the city may not be held liable for injuries resulting from such acceleration in flow if the surface waters are not diverted from their natural direction of flow.

**3. Same—**

The failure of a municipality to provide adequate culverts to take care of the drainage of surface water through a natural stream in ordinary and foreseeable storms cannot be a contributing cause of the drowning of a child who fell into the stream when the evidence discloses that there was no backup of waters at the point where the child fell in, but to the contrary, that the water was flowing rapidly at that place and that the child's body was recovered some two blocks downstream.

APPEAL by plaintiff from *Morris, J.,* February Civil Session, 1963, LENOIR Superior Court.

The plaintiff, administratrix of her daughter, Earline Roberson, age eight years, instituted this civil action to recover damages for her daughter's death, allegedly resulting from the actionable negligence both of the City of Kinston and the Housing Authority of that city. Both defendants, by answer, denied negligence.

At the conclusion of the plaintiff's evidence, the court entered judgment of compulsory nonsuit, from which the plaintiff appealed.

*White & Aycock by Chas. B. Aycock; H. E. Beech for plaintiff appellant.*

*Geo. B. Greene for City of Kinston defendant appellee.*

*Whitaker & Jeffress for defendant Housing Authority of The City of Kinston, appellee.*

HIGGINS, J.   The evidence discloses the following: In the year 1940 the Housing Authority of the City of Kinston was chartered by the State of North Carolina as a municipal corporation. The charter authorized it to acquire property in the City of Kinston on which were located unsanitary and unsafe buildings and to replace them with sanitary and safe buildings for rent to families of low income. The Authority acquired 9.69 acres of land in Kinston, bounded on the north for a distance of 418 feet by Adkin Branch, or Canal. The plaintiff's complaint described it as "Adkin Ditch." The canal had its source north of the city and emptied into the Neuse River to the south. It drained the entire City of Kinston and surrounding area. The plain-

tiff's witness described the canal as four to four and one-half feet in depth, and 10 to 12 feet in width.

The Housing Authority erected a number of housing units, in one of which the plaintiff and her daughter lived. The rear of this unit was 20 to 25 feet from the canal. The Authority built a concrete driveway between the building and the canal.

On July 9, 1956, 1.69 inches of rain fell in the Kinston area. Geraldine Rooks, nine at the time involved, gave this account of what happened on the 10th: "We (the witness and Earline Roberson) went to the Adkin Canal to see how far the water had come up, and there were a number of other children standing around; and there was a young boy, Donald Bradshaw, throwing pecans in Adkin Canal and she (Earline Roberson) was bending over to get one and when she stepped from the street to the dirt, the ground caved in and she fell in the water. The depth of the water was about an inch less than the paved street. . . . With reference to the water, it was going downstream in a swift manner."

The distance between the road and the canal, "about a foot and a half." The body was recovered about two hours later, three blocks downstream.

The evidence disclosed that in case of unusually heavy rainfall Adkin Canal overflowed its channel. Mr. Sutton, who was familiar with the area, testified: "I have seen the water high enough on one occasion that it came inside the apartment building."

The Housing Authority had provided a playground and a recreation building for the children of the tenants. The rear of the plaintiff's apartment was not in the playground area. However, children frequently played along the canal.

Prior to 1956, the City of Kinston had engaged in an extensive program of street widening and paving. These improvements had hastened the flow of surface water into Adkin Canal. Several blocks downstream from the housing project the City had placed three 72-inch tile culverts under the Caswell Street crossing. The plaintiff's evidence was to the effect that these were insufficient to carry the flow of Adkin Canal in case of rainfall of 1.69 inches.

The plaintiff alleged the death of her intestate resulted from the joint and concurrent negligence of the two defendants: (A) The Housing Authority was negligent in building the roadway too close to the canal, and in failing to erect a fence or barricade along its banks to protect the children from the dangers incident to the canal. (B) The City of Kinston was negligent in failing to deepen and widen Adkin Canal to accommodate the accelerated flow of surface water resulting

from its extensive street paving program, and in failing to erect suitable barricades along the canal.

The defendants filed separate answers, each denying its negligence. The answers make it unnecessary to consider any question of misjoinder. Likewise, the City of Kinston does not claim any governmental immunity. Hence liability is determined by the application of the rule of due care under existing circumstances and conditions.

The Housing Authority, by its demurrer to the evidence, presents essentially the defense interposed by demurrer to the complaint in *Fitch v. Selwyn Village,* 234 N.C. 632, 68 S.E. 2d 255. The rule of law declared in *Fitch,* and followed in many cases, sustains the Housing Authority's demurrer to the evidence: "The attractive nuisance doctrine generally is not applicable to bodies of water, artificial as well as natural, in the absence of some unusual condition or artificial feature other than the mere water and its location . . . But, we know of no decision in this or any other jurisdiction, where the owner of land has been held liable for failure to erect a fence or other obstruction to protect small children from obtaining access to a branch or creek upon his premises which flows in its natural state. . . . If it should be conceded that a branch or creek is inherently dangerous to children of tender years, it must be conceded that such streams cannot be easily guarded and rendered safe." See also, *Matheny v. Mills Corp.,* 249 N.C. 575, 107 S.E. 2d 143; *Lovin v. Hamlet,* 243 N.C. 399, 90 S.E. 2d 760; *Ford v. Blythe Bros. Co.,* 242 N.C. 347, 87 S.E. 2d 879; *Stribbling v. Lamm,* 239 N.C. 529, 80 S.E. 2d 270; 65 C.J.S., "Negligence," § 29(12), p. 475.

In determining the liability of the City of Kinston, it must be conceded the planning and construction of streets are necessary public functions. There is neither allegation nor proof of defects in the plans, nor negligence in their execution. The complaint is the paving of streets hastened the flow of surface waters from rain and melting snow into the Adkin Canal. Hastening the flow, causing a more rapid rise in the natural and only outlet, is a physical necessity resulting from the improvements. It is not negligence. "First, we are of the opinion that, in respect to the drainage or diversion of surface water, a railroad company enjoys the same privileges as any other landowner, but no greater, to be exercised under the same restrictions. . . . Secondly, a railroad company or any other landowner has a right to cut ditches and conduct the surface waters into a natural watercourse passing through its land, and if this right is exercised in good faith, and in a reasonable manner, for the better adaptation of the land to lawful and proper uses, no damage can be recovered if the lands of a lower own-

er are injured. . . . 'No doubt, the owner of land through which a stream flows may increase the volume of water by draining into it, without any liability to damages by a lower owner'." *Jenkins v. R.R.*, 110 N.C. 438, 15 S.E. 193; *Waffle v. R.R.*, 53 N.Y. 11.

". . . (B)ut in regard to the flow and disposal of surface water incident to the grading and paving of streets, a different rule is recognized, and a municipality, acting pursuant to legislative authority, is not ordinarily responsible for the increase in the flow . . . unless there has been negligence . . . causing the damage complained of." *Yowmans v. Hendersonville*, 175 N.C. 574, 96 S.E. 45.

Drainage is as necessary for a town or city as for a railroad or an individual. The surface water must not be diverted from its normal outlet. Acceleration is necessarily involved in drainage. The evidence, however, failed to show negligence on the part of Kinston in its street construction work.

Was the City of Kinston negligent in failing to widen and deepen Adkin Canal? On the occasion giving rise to this action the banks of the canal were practically full. On rare occasions there was some overflow. On one occasion the water backed up to the first floor of apartment building No. 12. We must remember a city does not own the land enclosed within its boundaries. Incorporation follows the location and expansion of a settlement. Likewise, the city cannot control rainfall. It cannot guarantee safety from floods on the natural watercourses. It may be liable if it negligently impedes the flow, causing damage. A city on a natural watercourse is not responsible for damage caused by a downpour. The doctrine of reasonable foreseeability implicit in negligence cases removes a city even farther away from liability for a death by drowning in a natural watercourse.

The plaintiff offered evidence that culverts under Caswell Street, several blocks below the housing development, were inadequate on July 10, 1956, to carry the flow of Adkin Canal. However, there was no backup of water at the housing development. The little girl who saw the plaintiff's intestate fall into the stream said: "The water . . . was going downstream in a swift manner." The body was found and recovered three or four blocks downstream. So, any impounding of water at the Caswell Street crossing had no bearing on the flow at the housing project where the little girl fell into the current and was swept to her death. Regrettable and sad as the case is, liability on the part of either defendant is not established by the evidence. The judgments of nonsuit are

Affirmed.