# 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓

## Simon Wagman, Et Al., Etc. v. Dominique Boccheciampe, Etc. Et Al.

September 10, 1965.

Record No. 6000.

Present, Eggleston, C. J., and Spratley, I'Anson, Carrico and Gordon, JJ.

*John A. K. Donovan* (*Eldon E. Lewis; Donovan, Turnbull & Brophy*, on brief), for the plaintiffs in error.

*Roland D. Hartshorn*, on brief, for the defendants in error.

Submitted on brief for the defendants in error.

CARRICO, J., delivered the opinion of the court.

Dominique Boccheciampe, an infant, by her father and next friend, Francois Boccheciampe, and Francois Boccheciampe, in his own right, the plaintiffs, filed a motion for judgment against Simon Wagman, Lawrence L. Levin and Myron L. Levin, a partnership known as Colonial Investment Company and trading under the assumed name of Grand View Apartments, the defendants.

The motion sought the recovery of damages for personal injuries sustained by the infant plaintiff, who was five years of age at the time, as the result of the alleged negligent acts of the defendants. It was alleged in the motion for judgment that the infant plaintiff suffered her injuries when she fell from an outside stairway maintained by the defendants at an apartment project owned by them in Fairfax County. The motion also sought the recovery of medical

expenses incurred by the father in the treatment and cure of the infant plaintiff's injuries.

The defendants filed grounds of defense in which they denied any negligent acts on their part.

The case was tried before a jury. A verdict was returned in favor of the infant plaintiff in the sum of $3000.00 and a separate verdict was awarded the father in the sum of $1549.55. The trial court approved both verdicts and, in a final order, entered judgments thereon. The defendants were granted a writ of error.

The evidence, which is without conflict, shows that on March 27, 1962, Mr. Boccheciampe entered into a written lease with the rental agent of the defendants for the occupancy of apartment number 202 in one of the units of the project owned by the defendants. One of the provisions of the lease read, "Children will not be permitted to play in public halls or on the lawns or entrance steps, or walks of the building."

The Boccheciampe family moved into the apartment on April 1, 1962. A concrete sidewalk led from the entrance of the building in which their apartment was located to the swimming pool provided for the tenants of the project. The sidewalk was level for some distance, then a stairway descended to a landing 41 feet long and another stairway descended to a lower ground level. The sidewalk and stairways were supported on one side by a vertical stone retaining wall, 7 feet 11 inches above ground level at the top of the first stairway and 4 feet 6 inches above ground level at the landing.

Along the retaining wall side of the sidewalk and stairways, there was installed a metal hand rail. The rail was 34 inches in height and was composed of two parallel bars each 1½ inches in diameter, supported by vertical posts. The lower rail was 18 inches above the sidewalk and stairways and the upper rail was 16 inches above the lower one. The posts of the hand rail were set in the concrete of the sidewalk and stairways 3 inches from the outside edge, above the retaining wall.

Frances Snitz, the resident manager of the apartment project, was called as a witness by the plaintiffs. She testified that she frequently saw children playing on the sidewalk and stairways, crawling through the bars or going around one end or the other of the hand rail, and walking on the three-inch ledge outside of the railing. She said that on each occasion she stopped the children from playing and that they would leave but "when you leave, they come back."

On September 3, 1962, which was Labor Day, Mrs. Snitz saw the

infant plaintiff among a group of children playing on the stairway, "running up and down and walking . . . on the outside of the rail." She went to her door and "called to them and they immediately went off." Mrs. Snitz then became occupied with showing an apartment to a prospective tenant.

Approximately a half hour later, the infant plaintiff, accompanied by three other children, returned to the area and began playing on the stairway. The infant plaintiff went around the end of the hand rail and walked along the three-inch ledge outside of the rail. She fell from the ledge, apparently where it was 4 feet 6 inches in height, to the ground below, fracturing her right arm. Her father, who was in his apartment, was summoned and the child was taken to the hospital.

Although the defendants have assigned a number of errors, we are of opinion that the controlling question, as phrased by the defendants, is this:

"Was there sufficient evidence presented to show negligence on the part of the [defendants] for which they could be held?"

▮ In *Revell* v. *Deegan*, 192 Va. 428, 65 S.E. 2d 543, 26 A.L.R. 2d 462, it was said, in a situation similar to the one before us:

"The legal principles by which the sufficiency of the evidence is to be tested are simple and well defined. A landlord who rents out parts of a building to various tenants, reserving the halls, stairways, and other approaches for the common use of his tenants, is under an implied duty to use ordinary care to keep such places in a reasonably safe condition, and is liable for injuries to persons lawfully using those places for failure to perform that duty . . . ." 192 Va., at p. 433.

▮ In the light cast by these principles, we examine the plaintiffs' allegations of negligence and view the evidence to determine whether the plaintiffs have borne their burden of proof in establishing a dereliction of duty on the part of the defendants.

The plaintiffs first alleged that the defendants were negligent because, knowing that children played on the hand rail, they failed to maintain the stairway in a reasonably safe condition and failed to modify or repair the railing.

The plaintiffs sought to sustain this allegation by calling to the witness stand Bernard Paul Landry, a safety engineer with nine years of experience.

Mr. Landry was asked if, in his opinion, the railing in question was

safe for children to play on. He replied, "In this particular location, no."

This testimony was inadequate to accomplish the purpose for which it was intended. Mr. Landry's expert opinion assumed that the defendants were under an obligation to provide a hand rail which was safe for children to play on. No such duty rested upon the defendants. Their duty was to furnish a hand rail which rendered reasonably safe the sidewalk and stairways for those making proper use thereof.

In 32 Am. Jur., Landlord and Tenant, § 690, p. 566, it is stated:

"The landlord is not liable to the tenant or to persons in privity with the tenant for injuries sustained because of the condition of a portion of the premises in the control of the landlord unless the injury occurred while the injured party was putting this portion of the premises to the use intended, for the liability of the landlord is no broader than the express or implied invitation as to the use of the reserved portion of the premises . . . ."

Here, the hand rail was intended to be used as a safety measure for those properly using the sidewalk and stairways, to prevent them from falling and to assist them in ascending and descending the stairways. All of the evidence showed that the rail was sufficient for those purposes. It was constructed according to the standards of the Fairfax County Building Code and it was not defective in any manner.

The injury to the infant plaintiff occurred while she was playing on the hand rail, putting it to a use for which it was not intended. The defendants neither expressly nor impliedly invited such a use. To extend their liability to include a duty to make the railing safe for children to play on would require them to make it injury-proof. To hold them liable if injury occurred would be to make them insurers of their tenants' safety. The law does not extend their liability that far. *Revell* v. *Deegan, supra*, 192 Va., at p. 435; *Berlin* v. *Wall*, 122 Va. 425, 434, 95 S.E. 394; *Harrison* v. *Mortgage Inv. Co.*, 58 F. 2d 881; 52 C.J.S., Landlord and Tenant, § 417, p. 12, at p. 26.

In an effort to show that the defendants should have modified or repaired the hand rail, Mr. Landry was asked to describe what could be done to make the railing safer for children. He recommended the installation of wire mesh so that a child, "cannot swing through or crawl through it."

This testimony gives little aid to the plaintiffs' case. The child did not fall from the railing because she had swung or crawled

through it. She gained entry to the three-inch ledge outside of the hand rail by going around the end of the railing. The installation of the wire mesh would not have prevented such action on her part. Thus, there was no causal connection between the lack of the wire mesh and the injury.

"... Evidence tending to show a causal connection must be sufficient to remove the case out of the realm of speculation and conjecture and into the realm of legitimate inference before submitting it to a jury for its determination." *Blacka* v. *James*, 205 Va. 646, 650, 139 S.E. 2d 47.

Mr. Landry was also asked if there was any kind of guard or protective device which could be installed at the ends of the hand rail to prevent children from going around the ends of it and getting on the three-inch ledge outside of the railing. He replied, "It's a fact, it wouldn't do any good." If such measures "wouldn't do any good," the defendants cannot be held for failing to do a vain thing.

We hold that the plaintiffs' evidence was insufficient to show that the defendants were deficient in maintaining the stairway or in failing to make modifications or repairs to the hand rail.

■ The plaintiffs next alleged that the defendants were negligent in failing to take effective steps to prevent children from playing in a known dangerous place.

Here, the contentions of the plaintiffs become rather nebulous and their argument difficult to follow. They merely state that "the landlords owed to the tenant appellees the active duty of protection, particularly after they (landlords) knew, through their agents, of the dangers to infant appellee."

Apparently, the plaintiffs take the view that the defendants were required to police the area in which the hand rail was located to prevent children from playing thereon. If that is their contention, it is without merit because it finds no support in law.

Moreover, Mrs. Snitz, the resident manager, who was called as a witness by the plaintiffs, was uncontradicted in her testimony that she stopped the children from playing on the stairways and railing whenever she saw them so engaged. She said that she had taken such action "many, many times." Thus, the plaintiffs proved by this witness, an agent of the defendants, that she had done the very thing that the plaintiffs complain was left undone by the defendants.

■ Finally, the plaintiffs alleged that the defendants were negligent in failing to notify the parents of the infant plaintiff that she "was playing in a reasonably dangerous place."

This contention of the plaintiffs is entirely lacking in substance. In the first place, there was no evidence presented to show that the parents were not so notified. Mrs. Snitz, the resident manager, was the only witness questioned on the subject. She was asked whether she had told the parents that she had seen the infant plaintiff "playing out there in a dangerous place." Her response was "I don't recall."

Moreover, the plaintiffs have cited no rule of law, nor are we aware of one, which required the defendants to notify the parents that their child was doing something she ought not to be doing. If the child had played on the hand rail as often as the plaintiffs assert, in their effort to show that the defendants knew of the child's actions, then surely the parents should have known her playful propensities as well.

It was the duty of the parents, both at law and under the terms of the lease, to provide that surveillance of their child's activities which they now seek to impose as an obligation upon the defendants. The parents will not be permitted to shift that burden to the defendants.

We answer the question presented in this appeal by saying that we are of opinion that the evidence was insufficient to show negligence on the part of the defendants for which they could be held. The evidence was, therefore, not sufficient to support the verdicts. The decision of the jury could only have been reached through speculation and conjecture. Verdicts resting upon such grounds cannot be allowed to stand.

Accordingly, the judgments appealed from are reversed, the verdicts of the jury are set aside, and final judgments are here entered in favor of the defendants.

*Reversed and final judgment.*