## Richmond

JOHN ARAGONA ENTERPRISES, INC. T/A KINGS ARMS APARTMENTS V. ROMMIE C. MILLER, ADM'R OF THE ESTATE OF CYNTHIA ANNE HALME, DECEASED.

October 9, 1972.

Record No. 7715.

Present, I'Anson, Carrico, Harrison, Cochran and Harman, JJ.

*Wayne Lustig* (*Campbell, Lustig & Hancock*, on brief), for plaintiff in error.

*Edward T. Caton, III* (*Caton & Wright*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

On October 17, 1969, Cynthia Anne Halme, 20 months of age, slipped out of the apartment where she lived with her parents while her mother was talking to a neighbor at the apartment door. Ten to twenty minutes after she was last seen by her mother in the apartment, looking at television with several other small children, she was found by neighbors in a drainage canal 60 to 70 feet upstream from

her apartment, apparently dead. She was revived and taken to the hospital. However, she died from pneumonia three days later as a result of her immersion in the canal.

Cynthia's administrator, her father Rommie C. Miller, brought this wrongful death action against John Aragona Enterprises, Inc., the owner and operator of the apartment leased by Cynthia's parents. The motion for judgment alleged that Aragona negligently failed to keep its premises in a reasonably safe condition and that Cynthia's death was a proximate result of such negligence. The case was tried before a jury, which returned a verdict for the administrator in the amount of $27,000 to be equally apportioned between the parents. The trial court reduced the amount of the verdict to $25,885, of which $25,000 was to be equally apportioned between the parents and $885 paid to the administrator for allowable expenses, and entered judgment for the administrator in the reduced amount. We granted Aragona a writ of error.

Aragona owns and operates an extensive apartment complex in the City of Virginia Beach known as the Kings Arms Apartments. Many of the building units comprising the complex border on the drainage canal in which Cynthia was found. The canal lies within the confines of a drainage easement of the City of Virginia Beach, extending across the Aragona property and adjacent property 100 feet in width, being 50 feet on each side of a center line which coincides with the Aragona property line at about the middle of the canal. The canal itself has a 70-foot top width. The water level, fluctuating with tidal flow, is approximately five feet below the level of the surrounding land and the banks of the canal are very steep.

Between the apartment buildings and the canal bank there is a level, open grassed area which was maintained by Aragona. The manager of the apartment complex testified that tenants were neither permitted nor denied the use of the area between the apartments and the canal, but he was aware that they did in fact use this area.

Aragona's principal contention is that it was free of any negligence which was the proximate cause of the death of plaintiff's intestate. On the other hand, the plaintiff-administrator says that Aragona was negligent in failing to exercise reasonable care to maintain the area between the apartment buildings and the canal in a reasonably safe manner and that it should have erected some sort of a barrier, such as a wall or hedge, to prevent children from falling into the canal.

A landlord is not liable to a tenant or to members of his family,

whether adult or infant, resulting from an open and obvious condition existing at the inception of the tenancy, and of which the tenant knew or had means of knowing equal to the landlord. *Berlin* v. *Wall*, 122 Va. 425, 437, 438, 95 S.E. 394, 398 (1918); *Golf Club Company* v. *Rothstein*, 97 Ga.App. 128, 130-32, 102 S.E.2d 654, 655-56, aff'd 214 Ga. 187, 104 S.E.2d 83 (1958); *Jones* v. *United States*, 241 F.2d 26 (4th Cir. 1957).

*Berlin* v. *Wall*, *supra*, involved an action by the infant child of a tenant seeking to recover for injuries received as the result of a fall through a skylight around which the landlord had erected a railing. The infant climbed or fell through the opening between the planks of the railing, or from the top of the railing, through the skylight to the floor beneath. Recovery was denied and in its opinion the court said:

> "Dangers constantly beset unattended small children, and the defendants cannot be held responsible for the happening of an accident from a possible danger, the existence of which was disclosed to the parents and natural guardians of the infant plaintiff, and of which the defendants had given sufficient warning." 122 Va. at 438, 95 S.E. at 398.

In *Golf Club Company* v. *Rothstein*, *supra*, the landlord owned an apartment building which was leased to Rothstein and numerous other tenants. Immediately behind the building was a backyard 60 feet in width, which was grassed over like a lawn, and immediately beyond that, with no fence or other barrier separating them, was a ravine about 75 feet in depth. There was nothing to protect the plaintiff or other children from slipping or falling from the grassed portion of the backyard into the steep side of the ravine. Rothstein's 2-year-old son, while playing in the yard, slipped and fell into the ravine and was injured. There, as in the instant case, the only negligence alleged pertains to a failure by the landlord to construct a fence between the grassed area and the ravine, or else have posted someone on duty to see that children did not fall into the ravine.

The court denied a recovery, and in its opinion said:

> "Thus, the grassed portion plus the ravine composed the back yard of the dwellings, and the child was playing either on the lip or along the side of the 75-foot ravine when he slipped and fell. Such an area is not a hidden trap but a perfectly obvious bit of irregular

terrain. The duty of an owner of land under Code § 105-401 is not to insure the safety of invitees but to exercise ordinary care to see that the premises are safe. Irregular as much of our Georgia countryside is, it could hardly be held that a landowner must render inaccessible to children every portion of irregular terrain or permanently station a guard to supervise their activities thereon. No question of attractive nuisance is presented here, nor of unfamiliarity with the premises, nor of a dangerous instrumentality or hidden trap (the gully on the steep side of a deep ravine, whether obscured by underbrush or not, not being in that particular location such a defect)." 97 Ga. App. at 133, 102 S.E. 2d at 657.

In *Jones* v. *United States, supra,* the landlord was the Federal Public Housing Administration. The apartment involved adjoined the main line of the Pennsylvania Railroad. The 23-month-old son of a tenant, temporarily unattended by his mother, wandered onto the railroad tracks and was severely injured. Recovery was sought on the theory that when the government erected the housing project adjacent to the railroad it knew, or in the exercise of reasonable care should have known, that there was serious danger to small children of its tenants and standards of reasonable care required some provision to protect these children. The court, speaking through Judge Hoffman, said:

"The danger here was open, obvious, natural, and common to all. In such a situation, the primary duty to inform, advise and protect a child of tender years must rest upon the parents or others in *loco parentis.* To require a landlord to erect a fence or barricade alongside a railroad track or highway, in order that adventurous children may not enter, would impose such a burden that it may unduly interfere with the lawful use of the property.

\*　\*　\*　\*　\*

"This is not a case in which the defendant has created any hidden defect or danger by its own act, or has been guilty of omission in failing to remedy such hidden danger on its own property. \*\*\*

"The Maryland authorities affirmatively support appellee's contention that a landlord owes no greater duty to a minor child than to the adult tenant with regard to open and obvious dangers. [Citing case.] To hold otherwise would, in substance, impose upon

a landlord the duty of making the premises, and adjoining premises, childproof. ***" 241 F. 2d at 29-30.

In *Fitch* v. *Selwyn Village*, 234 N. C. 632, 68 S.E.2d 255 (1951), the 2-year-old son of a tenant, while at play, and at a moment when his mother had stepped indoors to answer her telephone, wandered down to the waters of Sugar Creek on the landlord's property, fell into the creek and was drowned. Action was brought claiming that the landlord should have erected a fence or other obstacle to prevent small children from falling or climbing down the creek's banks to the creek. The lower court sustained a demurrer, which action was approved on appeal, the court observing:

" 'The attractive nuisance doctrine generally is not applicable to bodies of water, artificial as well as natural, in the absence of some unusual condition or artificial feature other than the mere water and its location.'

\* \* \* \* \*

"But, we know of no decision in this or any other jurisdiction, where the owner of land has been held liable for failure to erect a fence or other obstruction to protect small children from obtaining access to a branch or creek upon his premises which flows in its natural state.

\* \* \* \* \*

"If it should be conceded that a branch or creek is inherently dangerous to children of tender years, it must also be conceded that such streams cannot be easily guarded and rendered safe. \* \* \*" 234 N.C. at 634-35, 68 S.E.2d at 257.

To the same effect see *Roberson* v. *City of Kinston*, 261 N.C. 135, 134 S.E.2d 193 (1964), which involved an infant child of a tenant who fell into a canal of the City of Kinston adjoining the property of the landlord. There the issue involved the failure to erect a fence or barricade to protect the children from the dangers incident to the canal. Recovery was denied and the court reaffirmed the rule of law it had previously stated in *Fitch, supra*.

In the instant case the negligence alleged pertains not to a defect in construction, or failure to repair the apartments or to maintain the premises in a proper condition. The complaint is that Aragona did not provide a barricade between the rear yard of plaintiff's apartment

and the canal. True, Aragona owned the fee in the canal. However, the City of Virginia Beach had acquired an easement for its construction, and the canal was controlled, repaired and maintained by the City.

The canal and its embankments near the apartment in which Cynthia's parents resided were not intended for the use of the tenants of Aragona. It was not a reserved area, and it was not controlled by the landlord. No negligence is shown on the part of Aragona in the maintenance of the tenants' yards. Obviously the canal, located to the rear of the apartments, constituted a potential danger for an unattended 20-month-old infant. So would a ravine, a deep gully, a river, a branch, a railroad, a highway, a parking lot, or a busy alley located the same distance from the apartment. Had Aragona's apartment been located adjoining the beach, the Atlantic Ocean would have been a like hazard for an unattended infant of a tenant.

If the lack of a barrier constitutes a defect in the premises it was one which was open, obvious, apparent and common to all at the time the rental agreement was entered into between Aragona and the parents of plaintiff's intestate, and it so remained. It was not hidden or latent, and it was not created by the landlord.

The duty of an owner of land is not to insure the safety of its tenants and their children, *Apartments, Inc.* v. *Bisson*, 207 Va. 474, 478, 150 S.E. 2d 540, 542 (1966), but to exercise ordinary care to see that the premises rented to them are reasonably safe and to maintain the premises in a reasonably safe condition.

As regrettable and sad as the unfortunate death of plaintiff's intestate was, the evidence does not establish negligence on the part of Aragona. Therefore the judgment of the court below is set aside and reversed, and final judgment is here entered for Aragona.

*Reversed and final judgment.*

COCHRAN, J., dissenting.

I respectfully dissent. I believe that the landlord's liability in this case is a matter for the jury to determine, and its finding should be undisturbed if supported by credible evidence.

Aragona's primary contention, with which the majority agrees, is that there was no evidence that it failed to exercise reasonable care to maintain the area between the apartment buildings and the canal in a reasonably safe manner. I do not agree.

A landlord is not an insurer of his tenant's safety. *See, e.g., Langhorne Road Apartments, Inc. v. Bisson,* 207 Va. 474, 150 S.E.2d 540 (1966). However, as we said in *Taylor v. Virginia Construction Corp.,* 209 Va. 76, 79, 161 S.E.2d 732, 734 (1968), "it is the duty of the landlord, with respect to reserved common areas, to use ordinary care to keep such places in a reasonably safe condition. For failure to perform that duty, the landlord is liable for injuries to tenants and others lawfully using such places for their intended purposes. *Wagman v. Boccheciampe,* 206 Va. 412, 415, 416, 143 S.E.2d 907, 909 (1965); *Revell v. Deegan,* 192 Va. 428, 433, 65 S.E.2d 543, 546 (1951)."

There was evidence from which the jury could have found, as it did, that Aragona negligently failed to maintain the area behind the apartments in a reasonably safe condition. Aragona owned the land within the confines of that portion of the drainage easement crossing its property, including approximately one-half the canal. Subject to the easement rights of the City of Virginia Beach, it was free to use the land for its own purposes. Aragona mowed the grass behind the apartments both outside and inside the drainage easement to the edge of the canal embankment. Elsewhere in the apartment complex a recreation area had been extended by Aragona over the canal itself.

The canal and its steep bank constituted a danger which was open and obvious to anyone old enough to appreciate such a hazard. Indeed, Aragona admits that it received many comments from tenants on the dangerous proximity of the canal. The jury could have found that Aragona should have anticipated that small children would be living in some of its numerous apartments situated along the canal and using the area adjacent to the canal and that in the exercise of ordinary care Aragona should have erected some type of barrier, such as a fence, a wall, or a hedge reasonably designed to prevent the kind of accident which resulted in Cynthia's death. *See Berlin v. Wall,* 122 Va. 425, 435, 95 S.E. 394, 397 (1918). *Washabaugh, Adm'r v. Northern Virginia Construction Co.,* 187 Va. 767, 48 S.E.2d 276 (1948), which Aragona relies on, is inapposite. We were there concerned with a landowner's duty toward children who were trespassers rather than tenants.

As a general rule, a tenant injured as a result of an openly and obviously dangerous condition existing at the inception of the tenancy is barred from recovery. *See Berlin v. Wall, supra* at 437-38, 95 S.E. at 398. However, we have previously observed, in another context,

that "[w]hat would be an obvious danger to an adult would not be such to an infant under three years of age." *Tugman* v. *Riverside and Dan River Cotton Mills*, 144 Va. 473, 477, 132 S.E. 179, 180 (1926). As a matter of law a child less than seven years of age is conclusively presumed to be incapable of contributory negligence. *Morris* v. *Peyton*, 148 Va. 812, 821, 139 S.E. 500, 502-03 (1927). Nor can any alleged negligence of the parent or other person having custody or control of an infant be imputed to the infant. *Tugman*, *supra* at 479-81, 132 S.E. at 181.

Admittedly not all jurisdictions have reached the same conclusion in dealing with this issue. But *Williamson* v. *Wilmington Housing Authority*, 208 A.2d 304 (Del. 1965), is particularly interesting for its facts are similar to those of the present case. A four year old child living with his family in low income rental facilities was permitted to recover damages against the landlord for injuries incurred when he slipped down a steep embankment abutting the play area and fell in front of a train. The Delaware Supreme Court expressly distinguished *Jones* v. *United States*, 241 F.2d 26 (4th Cir. 1957), which is relied upon by the majority, on grounds that unlike *Jones*, there was evidence that the dangerous condition (a path down the embankment) *began* on the landlord's property. Whether the landlord permitted a dangerous condition to exist on the premises, the court ruled, must be determined by a jury from the facts and circumstances. *See also Rahn* v. *Beurskens*, 66 Ill. App. 2d 423, 428, 213 N.E.2d 301, 304 (1966). In the present case the facts are even more compelling since Aragona owned in fee simple one-half of the unguarded canal.

Regardless of how the issue of landlord's liability has been resolved in the past, it is necessary to reexamine the law in light of present circumstances. The multi-unit apartment complex such as Aragona's has become a common type of rental property. The duty of a landlord to his tenants' children for unreasonably hazardous conditions should reflect the degree of foreseeability of danger to the children, who because of their tender age and immaturity cannot discover or appreciate the risk, and the cost or burden of preventing such accidents in comparison with the risk to the children. *See Rahn* v. *Beurskens*, *supra* at 427-28, 213 N.E.2d at 304. Here the hazard to children of falling in the canal was foreseeable and could have been eliminated or greatly reduced at relatively slight expense to the landlord. The majority, however, would make the tenants in such a complex insurers of the safety of their infant children as to any open

and obvious dangers existing at the inception of their leases, regardless of the landlord's negligence. In effect, the bar of assumption of risk is thereby imposed upon children who are incapable of knowing or appreciating the risk.

Aragona further maintains that there was insufficient evidence that its negligence was a proximate cause of Cynthia's death. No evidence was introduced to show how Cynthia got into the canal. However, although the canal was accessible from both banks and from a highway bridge not far from where she was found, given the short time she was missing and the absence of any evidence of water flow in the canal, the jury could have reasonably inferred that she fell down the unprotected canal bank behind the apartments. *See Collins* v. *Smith, Adm'x*, 198 Va. 778, 96 S.E.2d 818 (1957); *Wilmington Housing Authority* v. *Williamson*, 228 A.2d 782, 785 (Del. 1967). Unlike *Wagman* v. *Boccheciampe*, 206 Va. 412, 416, 143 S.E.2d 907, 909 (1965), where the evidence clearly showed that the plaintiff child was injured while playing on a railing on a common stairway, a use for which it was not intended, no evidence was introduced to indicate that Cynthia's use of the area behind her apartment was improper.

In my view the evidence was sufficient to present jury issues as to negligence and proximate cause. Finding no error I would affirm the judgment of the trial court.

CARRICO, J., joins in dissent.