**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AMBER DAVIS, an infant who sues
by her next friend Evan Davis;
EVAN DAVIS, on his own behalf,
<u>Plaintiffs-Appellants,</u>

No. 94-2612

v.

BIRDNECK VILLAGE ASSOCIATES,
<u>Defendant-Appellee.</u>

AMBER DAVIS, an infant who sues
by her next friend Evan Davis;
EVAN DAVIS, on his own behalf,
<u>Plaintiffs-Appellees,</u>

No. 94-2613

v.

BIRDNECK VILLAGE ASSOCIATES,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
William T. Prince, Magistrate Judge.
(CA-94-329-2)

Argued: January 29, 1996

Decided: April 23, 1998

Before WIDENER and MOTZ, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Latane Ware Brown, CHANDLER, FRANKLIN & O'BRYAN, Norfolk, Virginia, for Appellants. Richard Joshua Cromwell, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellee. **ON BRIEF:** Mary Jane Hall, CHANDLER, FRANKLIN & O'BRYAN, Norfolk, Virginia, for Appellants. F. Bradford Stillman, Charles G. Meyer, III, MCGUIRE, WOODS, BATTLE & BOOTHE, L.L.P., Richmond, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

On April 11, 1993 the plaintiff, Amber Davis, fell off of the second story balcony of the apartment that her parents rented in Virginia Beach, Virginia. The apartment is in a complex owned by the defendant, Birdneck Village Associates, a Virginia partnership. Amber, who was two years old at the time of the incident, filed this diversity action in the district court by her next friend Evan Davis, her father.[1] The Davises lived in Connecticut at the time they filed the suit. The parties consented to have the case decided by a magistrate judge pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Both parties now appeal from the court's order dated November 14, 1994, which granted summary judgment in favor of Birdneck Village.

I.

The Birdneck Village apartment complex was built in 1968. The

_____

[1] Mr. Davis also joined the suit on his own behalf to recover for Amber's past and future medical bills.

2

Davises moved into a second floor apartment in July 1992. On April 11, 1993, Amber and her mother were alone in the apartment. Mrs. Davis answered the telephone and soon heard a noise. She saw that the screen door leading to the balcony was open and when she went to the balcony, she found Amber lying on the ground below. Nobody witnessed Amber's accident, and nobody knows whether Amber fell through the balcony railing or climbed over it.

The balcony railing is composed of two six-inch wide steel rails that run horizontally across the balcony. Three groups of nine one-half inch wide, twenty-four inch tall steel balusters run vertically. The distance between each baluster and between the brick walls on each end of the balcony and the balusters range from four and one-fourth to five and five-eighths inches. When Birdneck Village Associates built the apartment complex, the building code required spaces of no more than six inches between the balusters.[2] The building code in effect at the time of the incident required spaces between the balusters such that a sphere with a diameter of four inches could not pass through.[3]

The court granted the defendant summary judgment because the plaintiffs failed to allege facts that showed that the defendant breached the standard of care required by the Virginia Residential Landlord and Tenant Act, Va. Code § 55-248.2 et seq. Under the Act, the defendant owed plaintiffs the duties to "[c]omply with the requirements of applicable building and housing codes materially affecting health and safety" and to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Va. Code § 55-248.13. The court determined that Birdneck Village complied with the building codes because the new building code did not require retroactive application to existing buildings unless serious dangers existed or the condition was unsafe or unhealthy. The court also determined that the Davises had not shown any facts to prove that the building was unfit or uninhabitable so that Birdneck Village would be required to make repairs.

_____

[2] The Southern Standard Building Code was adopted by the City of Virginia Beach in 1965.
[3] The building code in effect at the time of the incident was the Uniform Statewide Building Code with the 1990 amendments. Va. Code § 36-97 et seq.

3

The Davises allege that because Amber's head had a diameter of five inches and some balusters were five and five-eighths of an inch apart, Amber fell through the balusters. The Davises further allege that had the balcony been in compliance with the current building code, Amber would not have been able to fit through the balusters. On appeal, they argue that the court should not have granted summary judgment for the defendant because factual issues exist as to whether the balcony was unsafe and unfit and whether Birdneck Village did whatever was necessary under the Virginia Residential Landlord and Tenant Act to fix the balcony.

Birdneck Village cross-appeals and claims that the court erred in not granting summary judgment based on the following three reasons: (1) the Davises cannot make out a prima facie case of negligence by showing why and how the accident happened, (2) Birdneck Village did not have notice of the alleged hazardous condition, and (3) the alleged hazardous condition was open and obvious. **4**

II.

We review a grant of summary judgment de novo . In re Bulldog Trucking, Inc., 66 F.3d 1390, 1395 (4th Cir. 1995). Summary judgment cannot lie if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is mandated, however, if after an adequate discovery period, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party bears the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Based on our review of the record, we find that the court correctly granted summary judgment for the defendant.

III.

The Davises allege that Birdneck Village breached its duty to "have its leased premises in a fit and habitable condition and to maintain its premises in compliance with the requirements of applicable building

_____

**4** The cross-appeal, case No. 94-2613, is moot and is dismissed for that reason.

4

and housing codes materially affecting health and safety." Complaint ¶ 6. The Virginia Residential Landlord and Tenant Act requires landlords to: (1) "[c]omply with the requirements of applicable building and housing codes materially affecting health and safety," and (2) "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Va. Code § 55-248.13.[5] To determine whether Birdneck Village complied with the applicable building codes, we must first determine which building codes are applicable.

Potentially applicable building codes include the Southern Standard Building Code, which was in effect when Birdneck Village was constructed, the Uniform Statewide Building Code (USBC) Volumes I and II with 1990 amendments, which were in effect at the time Amber fell off the balcony, and the BOCA National Building Code and BOCA National Property Maintenance Code, which the Virginia Board of Housing and Community Development incorporated into the USBC.[6] Section 1108(b) of the Southern Standard Building Code prohibited spaces more than six inches wide between the balusters. Thus, when built, Birdneck Village was in compliance with the applicable regulation. The USBC Volume I, which incorporates the BOCA Building Code, 1990 Edition, is titled "New Construction Code" and applies to "all buildings . . . which are constructed, altered, repaired or converted in use after March 1, 1991." USBC Vol. I § 100.6. Section 824.3 of the BOCA Building Code contains the requirement that

_____

[5] The Davises claim that the court incorrectly determined that Birdneck Village owed Amber only the standard of care set forth in the Virginia Residential Landlord and Tenant Act. Although the Davises cite a Virginia innkeeper case and Georgia and Illinois landlord cases, the Davises do not cite any Virginia law that supports the proposition that landlords owe infant tenants a greater duty of care than they owe adult tenants. Virginia law actually supports the proposition that landlords do not owe infant tenants any greater duty of care. See Wagman v. Boccheciampe, 143 S.E.2d 907, 910 (Va. 1965) (refusing to shift duty of supervising child from parents to landlord); Berlin v. Wall, 95 S.E. 395 (Va. 1918) (declining to distinguish between infant and adult tenants).

[6] Virginia Code § 36-98 authorizes the Board of Housing and Community Development to adopt and promulgate a Uniform Statewide Building Code.

5

"open guards shall have balusters or other construction such that a sphere with a diameter of 4 inches (102 mm) cannot pass through any opening." Birdneck Village was constructed in 1968, therefore, the USBC Volume I and the BOCA Building Code are not applicable.[7]

The USBC Volume II, which incorporates the BOCA National Property Maintenance Code, 1990 Edition, is titled"Building Maintenance Code" and contains maintenance regulations for existing buildings. See USBC Vol. I § 100.1 note; USBC Vol. II §§ 101.1, 100.6. Section 100.6 of the Building Maintenance Code specifically states "[n]o provisions of the Building Maintenance Code shall require alterations to buildings or equipment unless an unsafe or unhealthy condition exists." USBC Vol. II § 100.6. Section 103.5 of the Maintenance Code, titled "Unsafe conditions not related to maintenance," also states that "[t]he Building Maintenance Code does not generally provide for retrofitting existing buildings. However, conditions may exist in older buildings, because of faulty design or equipment, that constitute such serious and dangerous hazards that correction is necessary to protect life and health." USBC Vol. II § 103.5 note. This section provides that upon finding "a serious and dangerous hazard to life or health in a building which was constructed, altered, converted, or repaired before the effective date of the initial edition of the USBC," the code official may order changes to correct the condition, so long as the condition was not caused by faulty maintenance or a failure to comply with applicable regulations. USBC Vol. II§ 103.5.

The Davises acknowledge that the only evidence that the balcony was unsafe was that the new building code required less than four inches between balusters while the old code allowed six inches. The Davises did not provide evidence that a code official found the six inch wide balusters unsafe under USBC Vol. II § 103.5. They assert that because Amber fell off of the balcony, this is evidence that the balusters were unsafe. This is not true because the plaintiff has no evidence that Amber fell through the balusters; Amber might have climbed over the top of the railing rather than through the rails. The Davises ask us to presume that Amber fell through the balusters and then infer from that that the balcony was unsafe. The Virginia

_____

[7] We have no evidence that Birdneck Village was altered, repaired, or converted in use after March 1, 1991.

Supreme Court has stated that "[a]n inference cannot be drawn from a presumption, but must be founded upon some fact legally established." Chesapeake & Ohio Ry. Co. v. Heath , 48 S.E. 508, 509 (Va. 1904). The new building code does not require landlords of existing buildings to make any changes "unless an unsafe or unhealthy condition exists." USBC Vol. II § 100.6. Without evidence of an unsafe or unhealthy condition, the Davises have not shown that Birdneck Village breached a statutory duty. Likewise, the plaintiffs presented no evidence that the balcony was in an unfit or uninhabitable condition. The Davises cannot establish a prima facie case without proving that Birdneck Village breached a duty.

Without a witness, the plaintiffs have no evidence to prove that Amber actually fell through the balcony railing. Without evidence connecting the railing to Amber's fall, the plaintiffs cannot prove causation in fact. Under Virginia law, the Davises "must show why and how the accident happened. And if the cause of the accident is left to conjecture, guess, or random judgments, the plaintiff cannot recover." Sneed v. Sneed, 244 S.E.2d 754, 755 (Va. 1978).

In sum, we affirm for the reasons stated above, which are not essentially different from those stated by the district court.

AFFIRMED

7